(No. 41079.-

THE PEOPLE *ex rel.* Leland J. Nordlund, County Collector, Appellee, *vs.* THE ASSOCIATION OF THE WINNEBAGO HOME FOR THE AGED, Appellant.

*Opinion filed May 29, 1968.*

BROWN, CONNOLLY & OLIVER, of Rockford, (DAVID CONNOLLY, of counsel,) for appellant.

WILLIAM R. NASH, State's Attorney, of Rockford, (WILLIAM H. GATES, Assistant State's Attorney, of counsel,) for appellee.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

The plaintiff, Leland J. Nordlund, *ex officio* County Collector of Winnebago County, applied for a judgment of sale for delinquent taxes assessed for the year 1965 against property of the defendant, The Association of The Winnebago Home for the Aged. The defendant filed timely objections on the ground that the collector had been enjoined

from placing its property on the tax rolls by a prior order of the county court of Winnebago County, entered March 7, 1960; that said order had never been vacated and, therefore, these proceedings are a collateral attack on that decree and invalid. It further asserted that the real estate was tax exempt during the period in question because actually and exclusively used for charitable and beneficent purposes as an old people's home pursuant to the provisions of section 19.7 of the Revenue Act of 1939. (Ill. Rev. Stat. 1965, chap. 120, par. 500.7.) The trial court entered a decree denying defendant's objections and upholding the judgment for the taxes as assessed. The revenue being involved defendant appealed directly to this court.

Defendant's appeal poses two questions: (1) Are these proceedings invalid as a collateral attack on a prior decree of the Winnebago County Court entered March 7, 1960, and (2) Is defendant's property exempt from taxation under our constitution and applicable statute?

We must first consider the validity and effect of the March 7, 1960, order of the county court entered in the county collector's application for judgment and sale for delinquent 1958 taxes. After a hearing on defendant's objection the county court found that defendant's property was used exclusively for charitable purposes and directed a refund of the protested taxes. The order continued to provide "that the County Assessor, Board of Review and County Collector be and they are hereby further directed to remove said property from the tax rolls and to refrain from entering it upon the tax rolls so long as the present ownership and use and the present statutory exemption remained unchanged."

Defendant insists that the county court, in adjudicating matters under an application for judgment and order of sale of real estate for delinquent taxes, acted as a court of general jurisdiction and its order directing removal and restraining the re-entry of defendant's property on the tax

rolls was within the scope of its authority. They therefore claim that portion of the order is not subject to collateral attack in this proceeding, and, unless the March 7, 1960, order is vacated or reversed on direct appeal, the property could not be returned to the tax rolls without a showing of a change of ownership, use, or governing statute.

Plaintiff denies that the county court had equitable jurisdiction and argues that the part of the March 7, 1960, order granting equitable relief is a nullity.

County courts as they existed at the time of the 1960 proceedings were created by section 18 of article VI of our constitution of 1870. The applicable section reads in pertinent part as follows: "County Courts shall be courts of record, and shall have original jurisdiction * * * in proceedings for the collection of taxes and assessments, and such other jurisdiction as may be provided for by general law." Ill. Const., art. VI, sec. 18.

The applicable statutory enactment adds nothing to the constitutional provision regarding jurisdiction, merely stating that the "County courts shall have jurisdiction in * * * proceedings for the collection of taxes and assessments * * *." (Ill. Rev. Stat. 1959, chap. 37, par. 175.) No other statutory enactment then in force specifically provided county courts with any general equity jurisdiction; nor was there any wording in the statutes or constitution from which such jurisdiction might be inferred.

This court has consistently held that county courts have no general equity jurisdiction and could have such only by express grant from the legislature. The requirement of "express grant" was well illustrated in the decisions in *McDonough* v. *Gage,* 357 Ill. 466, and *Gill* v. *Lynch,* 367 Ill. 203. Both cases involved the question of the power of the county court to appoint a receiver to collect the rents and profits from real property pursuant to the provisions of the so-called Skarda Act. (Laws of 1963, p. 874.) The Skarda Act did not specify the forum in which receivership

proceedings were to be conducted. Since it concerned tax collection matters, constitutionally and statutorily the province of county courts, it was argued that there was a compelling implication that the legislature intended these courts to administer such receiverships. Despite this, the court ruled in each instance that the appointments were void and of no effect because, as stated in *McDonough* v. *Gage,* 357 Ill. 466, 470: "County courts have no general equity jurisdiction and could have such jurisdiction only by an express grant from the legislature."

There is no question but that the county court on March 7, 1960, had jurisdiction of the parties and the subject matter and its order either entering judgment for or refunding 1958 taxes could not be collaterally attacked. However, we are of the opinion that the county court lacked the equity power to perpetually enjoin the taxation of this property. The March 7, 1960, order is in some ways similar to an order collaterally attacked in *Armstrong* v. *Obucino,* 300 Ill. 140, where the court stated at pages 142, 143: "The statement has very frequently been made that where a court has jurisdiction of the parties and the subject matter, its decree, however erroneous, can only be attacked on appeal or error; but the rule is subject to an exception equally well settled,— that a decree may be void because the court has exceeded its jurisdiction. The bill prayed for the enforcement of the lien by a sale beyond and contrary to the powers given by the statute for enforcing mechanics' liens, and it does not follow that because the court had acquired jurisdiction of the parties and the subject matter it could make such a decree as was prayed for. Courts are limited in the extent and character of their judgments, and if they transcend their lawful powers their judgments and decrees are void and may be collaterally impeached wherever rights claimed under them are brought in question. The doctrine that where a court has once acquired jurisdiction it has a right to decide every question which arises in the cause, and its judg-

ment or decree, however erroneous, cannot be collaterally assailed, is only correct when the court proceeds according to the established modes governing the class to which the case belong and does not transcend in the extent and character of its judgment or decree the law or statute which is applicable to it."

*People ex rel. Baird and Warner, Inc.* v. *Lindheimer,* 370 Ill. 424, and *Nugent* v. *Toman,* 372 Ill. 170, cited by defendant, do not involve the exercise of equity powers by the county court, but were concerned with alleged procedural defects in tax collection proceedings. The defects were not directly asserted as a defense, by motion or appeal, but were raised collaterally in post-judgment *mandamus* and injunction proceedings. In neither case was there anything on the face of the record to indicate that the county court had not acted within the constitutional and statutory limits of its authority.

However, the March 7, 1960, order on its face clearly went beyond the jurisdiction of the court in proceedings for the collection of taxes and, insofar as it purported to enjoin the collection of taxes not then before it, was void. The trial court was therefore not precluded from determining the propriety of the 1965 assessment.

We must therefore consider if the property is exempt from taxation because used exclusively for charitable and beneficent purposes.

Defendant was incorporated as an Illinois not-for-profit corporation in 1904. It has no capital stock or stockholders and, according to its original charter, vests its management functions in a board of 18 managers. According to defendant's brief and the testimony offered in the trial court, the number of managers has been increased to 25. We assume that this increase was effected through a change in the by-laws, since the only amendment to the corporate charter shown in the record concerned itself with a change in defendant's corporate name. Members are elected for two-year

terms and all serve without pay, except the treasurer, who receives a salary of $125 per month. Administrative responsibilities are allocated to ten different committees selected from the board, each of which concerns itself with some aspect of the home's activities.

Defendant's stated corporate purpose is "to provide a home for the aged." It has no affiliation with any religious, charitable, educational, or like organization or entity. There is no specific wording or reference to charity or charitable purposes in its charter, nor does such document give evidence that it purports to hold its property in trust for such purposes. Since a copy of defendant's bylaws was not included in the record, we have no way of knowing whether or not it has any membership other than the 25 persons constituting its board of managers and therefore must assume that its board is self-perpetuating.

Since its corporate inception defendant has owned and operated two homes. Its original premises were located in Rockford and were vacated when, in 1951, the association removed its operation to newly constructed quarters in a rural area near that city. The land for the new location was provided by gifts while construction costs were paid from association funds. The new home can provide housing for 39 people in single rooms of comparable size and appurtenances.

Candidates for admission must be 65 years of age or older, pay a $4,000 entry fee, be in reasonable health, mentally capable, pass a routine and not too detailed physical examination, and must have resided in Winnebago County two years prior to applying for admission. The $4,000 entrance fee is mandatory and, according to the testimony, "must somehow be placed in the account" before a person may be admitted. A resident must also assign his social security benefits and title to all of his property to the association. Upon accepting a resident, the association obligates itself to provide him with a home, medical care, food,

and, according to the testimony of one witness, a "Christian burial." The association also refunds to a resident a small portion of his social security payments as a monthly allowance, interest on money contributed by him and the dividends from any securities he has transferred.

The resident's admission fee is amortized over his life expectancy and the portion allocated to a particular year is transferred to the operating funds of the home for that period. Funds so transferred, together with interest on the association's investments and the portions of social security benefits retained by the home are applied to operating expenses. Generally speaking, these are sufficient to defray fiscal requirements. Upon the death of a resident any unamortized admission fee becomes part of the general assets. At the time of the trial the association had assets conservatively valued at approximately $1,100,000. Its portfolio of stocks was shown on the audit at acquisition costs. Their market value was some $270,000 higher. Defendant's assets were derived from two principal sources: Gifts and endowments and the assigned property and unamortized fees of deceased residents. According to the audit and testimony, the ratio was approximately 68% from gifts and endowments and 32% from contributions from residents.

Based on the conduct of its affairs and use of its property, as described, defendant contends that it is tax exempt because the home it provides for the aged is exclusively used for charitable and beneficent purposes and not leased or otherwise used with a view to profit, pursuant to the provisions of section 19.7 of the Revenue Act of 1939. (Ill. Rev. Stat. 1965, chap. 120, par. 500.7, as amended by H.B. 1328, passed by the 1967 General Assembly.) That statute granting tax exemption to certain enumerated property reads in pertinent part with respect to charitable institutions as follows: "All property of institutions of public charity, all property of beneficent and charitable organizations, whether incorporated in this or any other state of the United

States, and all property of old people's homes, when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profits; and all free public libraries."

House Bill 1328 passed by the 1967 General Assembly added the following language as an amendment: "The words 'old people's homes' as used in this section shall include any old people's home licensed by the State of Illinois and owned by a not-for-profit corporation or organization and operated not for profit under the auspices of a religious, fraternal, charitable or other non-profit organization, which old people's home provides housing, meals, laundry and infirmary services to aged persons and which is financed wholly or in part by charges made to its residents or wholly or in part by endowment, gifts or bequests or by a combination of the foregoing. This definition shall be construed declaratory of the existing law and not as a new enactment."

Since the terms of article IX of our constitution subject all property generally to taxation, it has been our consistent policy to construe strictly this and like enactments granting tax exemptions. We have insisted that such "general laws" hew strictly to the letter and spirit of the exemption provisions contained in section 3 of article IX of the Illinois constitution of 1870, which provides in part as follows: "The property of the state, counties, and other municipal corporations, both real and personal, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, may be exempted from taxation; but such exemptions shall be only by general law." Ill. Const., art. IX, sec. 3; *McMurray College* v. *Wright,* 38 Ill.2d 272; *Kiwanis International* v. *Lorenz,* 23 Ill.2d 141; *Rogers Park Post No. 108* v. *Brenza,* 8 Ill.2d 286.

The burden of proving the right to exemption is upon the party seeking it, and in determining whether property

is included within the scope of an exemption, all facts are to be construed and all debatable questions resolved in favor of taxation. *Kiwanis International* v. *Lorenz,* 23 Ill.2d 141; *Rotary International* v. *Paschen,* 14 Ill.2d 480.

From the evidence presented it would appear that defendant's organizational make-up and use of its property conform generally to the applicable statute and amendment. However, as defendant readily admits, it must also comply unequivocally with the constitutional requirement of exclusively charitable use. The determination of compliance or noncompliance is a judicial function which may not be usurped by the legislature. *MacMurray College* v. *Wright,* 38 Ill.2d 272; *Locust Grove Cemetery Association* v. *Rose,* 16 Ill.2d 132.

It is difficult to frame a universally applicable definition of an exclusively charitable use. However, in the recent case of *Methodist Old Peoples Home* v. *Korzen,* 39 Ill.2d 149, we analyzed our past decisions concerning claimed charitable exemptions and derived from this analysis general guidelines and standards which we have consistently applied in passing on the merits of such claims.

As we stated in *Methodist Old People's Home* at pages 156, 157: "It has been stated that a charity is a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, persuading them to an educational or religious conviction, for their general welfare—or in some way reducing the burdens of government (*Crerar* v. *Williams,* 145 Ill. 625); that the distinctive characteristics of a charitable institution are that it has no capital, capital stock or shareholders, earns no profits or dividends, but rather derives its funds mainly from public and private charity and *holds them in trust for the objects and purposes expressed in its charter, (People ex rel. Cannon* v. *Southern Illinois Hospital Corp.,* 404 Ill. 66; *People ex rel. Hellyer* v. *Morton,* 373 Ill. 72; *Congregational Sunday School and Publishing Society* v. *Board of Review,* 290

Ill. 108) ; that a charitable and beneficent institution is one which dispenses charity to all who need and apply for it, does not provide gain or profit in a private sense to any person connected with it, and does not appear to place obstacles of any character in the way of those who need and would avail themselves of the charitable benefits it dispenses. (*Sisters of Third Order of St. Francis* v. *Board of Review*, 231 Ill. 317) ; that the statements of the agents of an institution and the wording of its governing legal documents evidencing an intention to use its property exclusively for charitable purposes do not relieve such institution of the burden of proving that its property actually and factually is so used, (*Skil Corp.* v. *Korzen*, 32 Ill.2d 249; *People ex rel. Pearsall* v. *The Catholic Bishop of Chicago*, 311 Ill. 11) ; and that the term 'exclusively used' means the primary purpose for which property is used and not any secondary or incidental purpose. These principles constitute the frame of reference to which we must apply plaintiff's use of its property to arrive at a determination of whether or not such use is in fact exclusively for charitable purposes."

Defendant's insistence upon the payment of a sizable admission fee, the assignment by a resident of his assets and the health requirements imposed, constitute an even more serious impediment to the tax exempt status it seeks. We find that these provisions cannot be reconciled with our requirements of the application of benefits to an indefinite number of people, dispensing charity to all who need and apply for it and not appearing to place obstacles of any character in the way of those who need and would avail themselves of the benefits defendant provides.

We agree with defendant's contention that charging fees and dispensing benefits to other than those who are poverty stricken does not cause an institution to lose its charitable character. (*People* v. *Young Men's Christian Association*, 365 Ill. 118, *Sisters of Third Order of St. Francis* v. *Board of Review*, 231 Ill. 317; *People ex rel. Cannon* v.

*Southern Illinois Hospital Corp.*, 404 Ill. 66.) However, we find no conflict between our decisions in those cases and our ruling on the facts presented here. While the hospitals and the YMCA hotel involved in those cases did charge for their accommodations, they admitted any and all who applied, imposed no restrictions relative to general health, did not condition an applicant's admission on his first making a contribution to the general funds of the institution and charged generally only for the day-to-day care and services rendered. Furthermore, in the case of the hospitals many impoverished persons were readily admitted and cared for without charge.

Clearly these institutions, though charging fees, dispensed their benefits to all who needed and applied for them and placed no obstacles in their way.

Defendant, on the other hand, in the relatively long period of its operation has admitted only two people who could not pay its admission fee and, according to the record, has allocated from its sizable holdings only sufficient funds to provide for one needy applicant.

Defendant cites decisions of courts of other States granting tax exemption on facts similar to those before us. As we stated in *Methodist Old People's Home* v. *Korzen,* 39 Ill.2d 149, 159: "The numerous decisions of this court cited by both plaintiff and defendants in their briefs referred to in this opinion provide us with ample background for deciding the issue presented and we see no reason for relying on decisions from other jurisdictions based on a different statutory and constitutional foundation."

For the reasons stated we hold the defendant's property is not used exclusively for charitable purposes within the meaning of our constitution and not entitled to exemption from tax.

The judgment of the trial court is affirmed.

*Judgment affirmed.*