WESLEY WILLOWS, Appellant, *vs.* CORBIN B. MUNSON, County Treasurer, *et al.*, Appellees.

*Opinion filed September 26, 1969.*

Reno, Zahm, Folgate & Skolrood, of Rockford, (Robert K. Skolrood, of counsel,) for appellant.

Paul G. Reinhard, State's Attorney, of Rockford, (William H. Gates, Assistant State's Attorney, of counsel,) for appellees.

Hackler, Anderson, Londerholm, Speer & Vader, of Olath, Kansas, and Griffin, Winning, Lindner, Newkirk & Cohen, of Springfield, (Eugene T. Hackler and Alfred F. Newkirk, of counsel,) for *amicus curiae* American Association of Homes for the Aging.

Robert S. Cushman, of Chicago, *amicus curiae*.

Mr. Justice House delivered the opinion of the court:

Plaintiff, Wesley Willows, an Illinois not-for-profit corporation, filed a complaint in the circuit court of Winnebago County alleging that it was exempt from real-estate and personal property taxation and praying that the collection, assessment and levy of taxes be enjoined. Judgment was entered against the plaintiff and this appeal followed. The questions presented are whether plaintiff's property is exempt from taxation under the constitution and section 19.7 of the Revenue Act of 1939 (Ill. Rev. Stat. 1967, ch. 120,

par. 500.7), and whether the trial court correctly ruled on certain objections to evidence.

Plaintiff was incorporated in 1962. It has no capital stock or stockholders. The affairs of the corporation are handled by a board of trustees, 26 in number, at least three-fourths of whom must be members of the Methodist Church. The board of trustees holds the property and assets of Wesley Willows in trust for the Rock River Annual Conference of the Methodist Church. The board of trustees is authorized "to enter into any contract, agreement, or lease necessary to accomplish the business of the corporation; to pledge assets, sell assets, mortgage property, and purchase property, to receive, receipt for, acquire, manage and control donations, gifts, bequests, legacies or devises of real or personal property, absolutely or conditionally, and the Board of Trustees shall be vested with full and absolute discretion in dealing therewith and the handling of the same."

The property taxed consists of a building just under 100,000 square feet erected at a cost of approximately $2,000,000. There are 130 rooms of which 118 are 12' x 18' and 12 studio rooms 15' x 18'. Since the initial construction, the plaintiff has built garages for its residents' automobiles at a cost of $40,320.

Persons seeking to reside in the home must submit detailed statements as to their health, financial condition and personal history, accompanied by a $50 nonrefundable application fee. The applications are reviewed by the admissions committee, who, under the by-laws, "shall review the information and facts presented by the superintendent concerning applications for admission to the home and shall accept, defer or reject said applications." Upon being admitted the prospective resident must execute a written agreement obligating him to pay a founder's fee and a monthly service charge. The founder's fee varies with the type of room and location from $9,000 to $20,500. The monthly care charges range upward from $200 per month and can

be raised not to exceed 5% in any one year if the cost of operation increases.

Extra charges are made for special services. An agreement may be terminated by the resident after giving 60-days written notice. The plaintiff also has the right to terminate by giving 60-days notice in case the member wilfully and repeatedly violates the spirit and purposes of the home as stated in its by-laws and rules and regulations. In the case of termination by either party, plaintiff is entitled to reimburse itself for all unpaid bills while the member was in residence. A member is entitled to a *pro-rata* portion of the founder's fee, which is considered earned by plaintiff at the rate of $\frac{1}{36}$th for each month of residence so that the plaintiff has earned all of the founder's fee after 3 years. Plaintiff also has a preferred claim against the estate of any deceased member for any unpaid balance, each member having agreed that any such indebtedness shall be a lien upon his property. In case a member has any insurance or any funds which are sufficient to defray the expense of a Christian burial, the plaintiff is reimbursed for its actual expense for this service.

Expenses of all drugs, dental service or optical services, or health appliances are paid by the member. If health services beyond the scope of facilities and the personnel of Wesley Willows Health Center are needed, the member is transferred to an outside hospital or other institution. Should the member in the judgment of the staff physician and the administrator become mentally ill so as to jeopardize his own health and safety or the health and safety of others, the plaintiff may transfer the member to the type of facility equipped to care for his needs. All such services rendered to the member outside of the home are the sole responsibility of the member.

There is no provision in the plaintiff's by-laws which compels it to accept an applicant if he cannot pay the founder's fee or the monthly service charge. Nor does the plaintiff

have to continue to provide care and shelter for any resident who may become unmanageable because of illness. The by-laws provide for considering applicants who may be unable to meet the above financial requirements, but their admission is not mandatory.

Plaintiff maintains that its property is exempt from taxation because it meets the requirements of section 19.7 of the Revenue Act of 1939 as amended by H.B. 1328 passed by the 1967 General Assembly. The essence of section 19.7 is that property must be "actually and exclusively used" for charitable or beneficent purposes to escape taxation. This legislation must be construed in reference to section 3 of article IX of the constitution which provides: "The property of the state, counties and other municipal corporations, both real and personal, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, may be exempted from taxation; but such exemption shall be only by general law."

Since article IX subjects all property to taxation, the courts have strictly construed statutes providing exemption and place the burden of proving the right to exemption upon the party seeking it. *People ex rel. Nordlund* v. *The Association of the Winnebago Home for the Aged,* 40 Ill.2d 91.

In *Methodist Old People's Home* v. *Korzen,* 39 Ill.2d 149, 157, a case involving almost identical facts, we defined a charitable institution as "one which dispenses charity to all who need and apply for it, does not provide gain or profit in a private sense to any person connected with it, and does not appear to place obstacles of any character in the way of those who need and would avail themselves of the charitable benefits it dispenses." This definition does not fit the plaintiff under the facts in this case. What was said thereafter in that opinion is singularly appropriate here: "While charging fees would not necessarily remove plaintiff from the category of a charitable institution (*American College of Sur-*

*geons* v. *Korzen,* 36 Ill.2d 340, 348; *People* v. *Y.M.C.A,* 365 Ill. 118), the fact that it allocates living space from the standpoint of desirability of location and size on the basis of the amount of the Founder's Fee and monthly charges paid by a resident seems to us lacking in the warmth and spontaneity indicative of charitable impulse. Rather, it seems more related to the bargaining of the commercial market place. Coupled with plaintiff's stringent health requirements it is certainly sufficiently restrictive to prevent our saying that the property is used for the benefit of an indefinite number of people and that no obstacles are placed in the way of aged persons needing and seeking the benefits plaintiff provides." (39 Ill.2d at 158.) Plaintiff's primary concern appears not to be the needy and dispensing charity to them, but providing suitable living quarters and hotel-type services to those residents who can pay the founder's fee and monthly service charge.

Argument that Wesley Willows is tax exempt, overlooks the fact that any group of old people could organize a not-for-profit corporation, build and operate a $2,000,000 apartment with high income requirements, founder's fees and monthly charges, secure tax exemption and eventually own a substantial asset. This logic runs contrary to the constitution, statutes, and the decisions of this court. It is not conceivable that the residents of plaintiff's home can be considered public charges and poverty stricken. The founder's fee when coupled with the monthly service fee required by plaintiff would provide a standard of living sufficient to obviate the necessity of public aid to the proposed residents. The services extended by the home (except a few isolated instances) are for value received and do not relieve the State of its burden.

Plaintiff's remaining arguments concern alleged errors committed by the trial court in refusing to admit certain evidence concerning financial statements, life expectancy tables, founder's fees and methods of financing of other

old-people's homes as well as plaintiff's Illinois and Federal tax exemption letters. The trial court admitted specific evidence in regard to plaintiff's method of financing, founder's fees and life expectancy tables. Evidence about other old-people's homes on these issues would be immaterial to the question of whether plaintiff itself was a tax-exempt charitable organization. Nor does plaintiff's exemption from Federal income and State sales taxes, as shown in the exemption letters, furnish material facts about exclusive charitable use of property under our constitution.

Certainly, all evidence necessary to a decision as to whether or not Wesley Willows was a charitable organization was admitted, and remanding this case for a new trial would serve no useful purpose or result in a different judgment if the evidence outlined in plaintiff's argument had been admitted.

The judgment of the circuit court of Winnebago County is affirmed.

*Judgment affirmed.*