(No. 43858.—

Marvin Hoffman *et al.*, Appellees, *vs.* Robert J. Lehnhausen, Director of the Department of Local Government Affairs, *et al.*, Appellants—Harry Roberts *et al.*, Appellees, *vs.* Patrick J. Cullerton *et al.*, Appellants.

*Opinion filed April 1, 1971.—Rehearing denied May 26, 1971.*

GOLDENHERSH and KLUCZYNSKI, JJ., dissenting.

WILLIAM J. SCOTT, Attorney General, of Chicago, (FRANCIS T. CROWE and SAMUEL E. HIRSCH, Assistant Attorneys General, of counsel,) for appellants Robert J. Lenhausen *et al.*

EDWARD V. HANRAHAN, State's Attorney, of Chicago, (DANIEL P. COMAN, Chief of the Civil Division, and JOHN J. HENELY (Senior Law Student), of counsel,) for appellants P. J. CULLERTON *et al.*

ROSS, REINSTEIN & BLOCK, and LOWELL J. MYERS, both of Chicago, (PHILIP T. REINSTEIN, of counsel,) for appellees.

MICHAEL H. BRODKIN, RAYMOND I. SUEKOFF, MILTON K. JOSEPH, and CHARLES LIEBMAN, all of Chicago, for intervenor-appellant.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The primary issue on this direct appeal from the circuit court of Cook County is the validity, under the constitution of 1870, of a section of the Revenue Act which, as amended, created the following exemption from taxation:

"A homestead exemption limited to a $1,500 maximum reduction from the value, as equalized or assessed by the Department of Local Government Affairs, of real property that is occupied as a residence by a person 65 years of age or older who is liable for paying real estate taxes on the property and is an owner of record of the property or has a legal or equitable interest therein as evidenced by a written instrument, except for a leasehold interest. This amendatory Act of 1970 applies to assessments made in 1970 and thereafter and taxes payable in 1971 and thereafter and the county assessor or supervisor of assessments, as the case may be, shall afford persons qualifying for exemptions under it a reasonable opportunity to file for such exemptions after its effective date." Ill. Rev. Stat. 1970 Supp., ch. 120, par. 500.24.

Two class actions which asserted the invalidity of this provision and sought to restrain its enforcement on the ground that it violated sections 1 and 3 of article IX of the constitution of 1870 were consolidated in the circuit court. The facts were stipulated, and the court granted the motion of the plaintiffs for summary judgment, holding the statute unconstitutional and enjoining its enforcement. The court found there was no just reason to delay enforcement of or appeal from this order, and retained jurisdiction for the purpose of granting any other relief it deemed appropriate. The defendants, Robert J. Lehnhausen, Director of the Department of Local Government Affairs, the County of Cook, Patrick J. Cullerton, Assessor of Cook County, and other county officers, have appealed directly to this court.

Section 1 of article IX of the constitution provides that "The general assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every

person and corporation shall pay a tax in proportion to the value of his, her or its property * * *." Section 3 of article IX of the constitution provides: "The property of the state, counties, and other municipal corporations, both real and personal, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, may be exempted from taxation * * *."

The Attorney General argues that the homestead tax exemption comes within the provision permitting the legislature to exempt "property * * * used exclusively for * * * charitable purposes." We have consistently held that a charitable exemption within the meaning of the constitution requires (1) ownership of the property by a charitable organization and (2) its exclusive use for charitable purposes. (*Methodist Old Peoples Home* v. *Korzen,* 39 Ill.2d 149; *Coyne Electrical School* v. *Paschen,* 12 Ill.2d 387; *Rogers Park Post No. 108* v. *Brenza,* 8 Ill.2d 286.) Homeowners 65 years of age or over are not charitable organizations, nor is the use of their property for private living quarters a charitable use. See *People ex rel. Nordlund* v. *Association of the Winnebago Home for the Aged,* 40 Ill.2d 91; *MacMurray College* v. *Wright,* 38 Ill.2d 272; *People ex rel. Thompson* v. *First Congregational Church of Oak Park,* 232 Ill. 158.

The Attorney General also argues that section 3 of article IX applies only to the authority of the legislature to create tax exemptions from a State property tax and has no application to a tax levied by a local government, and since the only property taxes now levied in the State are levied by local governments, there is nothing on which the constitutional provision can operate. The short answer to this contention is that there is nothing in the plain language of the section to support it, and this provision has been consistently held to govern the exemption of property from taxes imposed by local governments. See, *e.g., People ex rel.*

*County Collector* v. *Hopedale Medical Foundation*, 46 Ill.2d 444; *Willows* v. *Munson*, 43 Ill.2d 203; *Methodist Old Peoples Home* v. *Korzen*, 39 Ill.2d 149.

The defendants also take the position that the homestead exemption is merely a "property valuation reduction" and not an exemption. A valuation reduction is a partial exemption, and if the value was reduced to zero, it would be a full exemption. Looking to the practical effect of the statute before us, we think it clear that section 3 of article IX of the 1870 constitution does not authorize the legislature to grant an exemption in the guise of a homestead "valuation reduction."

There are numerous cases in which this court has stated that the legislature may not grant exemptions other than those authorized by section 3 of article IX of the constitution. (See *e.g., Locust Grove Cemetery Ass'n of Philo* v. *Rose*, 16 Ill.2d 132; *People ex rel. McDonough* v. *Chicago Union Lime Works Co.*, 361 Ill. 304; *Supreme Lodge Modern American Fraternal Order* v. *Board of Review*, 223 Ill. 54; *City of Chicago* v. *Baptist Theological Union*, 115 Ill. 245.) In this case it is argued, however, that the present statute is authorized by section 32 of article IV of the constitution which provides that "The general assembly shall pass liberal homestead and exemption laws."

The "homestead" and the "exemption" which are referred to in section 32 of article IV have always been related to freedom from execution sales to enforce judgments upon the claims of creditors. (See Kales, Homestead Exemption Laws, *passim.*) Under our laws neither the homestead nor the personal property exemption has ever been available in the case of judgments for the nonpayment of taxes.

So far as we have been able to ascertain in the limited time available since this case was submitted for decision on an expedited emergency basis, the only time that it was ever suggested that the exemption embodied in this con-

stitutional provision might be in any way related to taxation occurred during the debates upon the adoption of the 1870 constitution, when one of the delegates moved that a homestead to the value of $1000 "be exempt from State, county and municipal taxation", and also be exempt from sale for the nonpayment of taxes. (Debates and Proceedings, Constitutional Convention 1870, pp. 903, 904.) The amendment was summarily rejected. From the tenor of the argument offered in support of this proposal, it is difficult to say that it was seriously advanced. (Debates, p. 903.) And apart from what now appears to have been the intrinsically ironic quality of that argument, the proponent of the amendment stated at a later stage of the discussion: "Then Mr. Chairman, I have been voting under a misapprehension. I have voted for all these amendments to the original section in order to load it down, or render it so objectionable that it could not pass as a whole, with the view of securing the adoption of the substitute of the gentleman from Clark. (Mr. Scholfield)" (Debates, p. 907.) The substitute offered by the gentleman from Clark did not refer to exemption from taxation, and would have permitted the homestead to be sold for nonpayment of taxes. Debates, p. 907.

We are satisfied that the trial court properly held that the statute before us was not authorized by the homestead and exemption provisions of section 32 of article IV, and was prohibited by sections 1 and 3 of article IX of the constitution, and we affirm that ruling.

One subsidiary problem concerns the correctness of the ruling of the trial judge which denied the application of Samuel Litt for leave to intervene "in his own behalf, and on behalf of, and as representative of, the class" made up of persons over 65 who would gain by reason of the exemption provided by the statute. The petition for leave to intervene was based upon the premise that no members of the affected class had been made parties and upon the assertion that in their absence no valid decree could be entered. It appears,

however, that in September of 1970 the parties had stipulated that the interests of persons over 65 were adequately represented by the State's Attorney of Cook County. We see no reason to question the accuracy of the fact so stipulated. The petition for leave to intervene was not filed until November 6, 1970, after the trial judge had heard the arguments of the parties, indicated his decision, and fixed November 6, 1970, as the date upon which a formal order would be entered. The petition for leave to intervene was properly denied. See Ill. Rev. Stat. 1969, ch. 110, par. 26.1.

The final problem concerns the application of attorneys for the plaintiffs in the consolidated action for an allowance of costs and reasonable attorneys fees. These motions were denied, and in our opinion the ruling of the trial judge was correct. Several considerations set this case apart from the usual situation in which attorneys fees are allowed from a fund brought into court by one who sues as a member of a class. No fund was involved in this case. The attorneys for the plaintiffs say that this circumstance is irrelevant, because the trial judge refused to enter an order which would have created such a fund. Again we think, however, that the ruling of the trial court was correct. We are aware of no authority under which the process of tax collection and distribution could have been interrupted to divert from the governmental bodies that had levied the taxes an amount fixed by the court as fees for the attorneys for the plaintiffs.

There is no doubt that the attorneys for the plaintiffs have rendered valuable services and that their efforts have benefited the class of persons they purported to represent. It is also true that allowances of fees and expenses to those who volunteer to represent the rights of others are more freely made today than in the past. The authorities are discussed in *Mills* v. *Electric Auto-Lite Co.* (1970), 396 U.S. 375, 24 L. Ed. 2d 593, 90 S. Ct. 616. Nevertheless the principle of *stare decisis* remains a basic tenet of our legal system, and one of the consequences is that a legal doctrine

established in a case involving a single litigant characteristically benefits all others similarly situated.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE GOLDENHERSH, dissenting:

In my opinion the staute is constitutional and I would reverse the judgment of the circuit court.

"The meaning of the constitution is not to be ascertained by giving too great weight to a single phrase, sentence or section. Its several provisions are all parts of one instrument and must be construed together, giving each its proper consideration. * * * Each expression is subject to modification by other language of the instrument, and only when each part of the instrument is considered with reference to every other part and all their relations can a true construction be reached." *People ex rel. Chicago Bar Ass'n* v. *Feinberg,* 348 Ill. 549, 566.

"The legislature does not look to the State constitution for its authority to act. It looks to that document and to the Federal constitution only for restrictions upon its power to act. [Citations.] Every subject within the scope of civil government which is not within some constitutional inhibition may be acted upon by the General Assembly. [Citations.]" *People* v. *Dale,* 406 Ill. 238, 243.

It should first be noted that in none of the cases upon which the majority relies was it necessary to construe section 3 of article IX and another provision of the constitution concerning the same subject.

The first homestead law was enacted in 1851 (Laws of 1851, p. 26.) It provided, *inter alia,* "But no property shall, by virtue of this act, be exempt from sale for non-payment of taxes on assessments, * * *"

When the Constitutional Convention of 1869-70 met some 19 years later, the Committee on Miscellaneous Sub-

jects prepared and offered a long and detailed provision on homestead exemption (Debates of Constitutional Convention 1969-70, p. 281), which was debated at length. (Debates of Constitutional Convention 1969-70, pp. 895-912, 1689-1692.) The delegates who spoke on the subject agreed that the homestead law of 1851 was humanitarian, that it had been warmly accepted by the public and should be made a part of the fundamental law. The debate centered around the details of the proposed provision which was essentially the homestead law of 1851. There was strong sentiment to liberalize the homestead exemption and numerous amendments to the proposed provision were offered.

One amendment was offered which provided, "There shall be exempt from State, county and municipal taxation, and from liens of judgments and decrees of courts, * * *." With remarkable prescience, the delegate who offered the amendment went on to say, "Sir, I imagine that the time is not far distant when the tax collector, or rather the government, is to be the cold and heartless creditor that the poor man will have to grapple with. The poor man, the laborer, to-day, whether he owns a foot of land or not, is bearing the burdens of this government. There is scarce a particle of food goes into his mouth, to sustain his life, there is not a shred of clothing that shields him from the cold, that is not subject to taxation. The real burdens of the country are on the poor men, the yeomanry. While by national enactment we have many exempted from taxation, let us in this State of Illinois, inaugurate the principle that the poor man's home, his family altar, shall also be exempt from taxation. That will relieve some of these gentlemen, who were opposed to laying taxes, levied for railroad subscriptions, lest the poor widow should have to pay her share. Let us now come to the relief of the poor widow, by granting her exemption from taxation, so that her lands cannot be sold by a heartless creditor, the government, if you please, any more than by an individual. It is no more invading the

sanctity of a contract than the original section." The delegates who favored leaving the details of the homestead exemption law to the General Assembly finally prevailed and the short provision now contained in section 32 of article IV was adopted. Debates of Constitutional Convention 1869-70, p. 1692.

Thus, the Constitutional Convention of 1869-70 rejected a provision which would have required that a homestead of not less than $1,000 be exempted from taxation and refused to adopt a provision which would have prohibited the legislature from excepting a homestead from sale for the non-payment of taxes. It chose instead, the middle road and provided that the General Assembly shall pass liberal homestead laws. Reading section 32 of article IV and section 3 of article IX together, I am of the opinion that the General Assembly had the authority to enact the homestead-tax-exemption provision.

Mr. JUSTICE KLUCZYNSKI joins in this dissent.