PLYMOUTH PLACE, INC., Plaintiff-Intervenor-Appellee, *v.* THOMAS M. TULLY *et al.*, Defendants-Appellants.

First District (1st Division)    No. 76-1244

Opinion filed November 7, 1977.—Modified on denial of rehearing November 28, 1977.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Michael F. Baccash, Assistant State's Attorneys, of counsel), for appellants.

Thomas D. Flanagan and Dean H. Bilton, both of Flanagan, Bilton and Brannigan, of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Plaintiff-Intervenor, Plymouth Place, Inc., filed a suit against defendants seeking to enjoin the collection of any real estate taxes levied on plaintiff's property for tax years 1970 through 1975. In count I plaintiff requested that the court find and declare that all plaintiff's property was exempt from taxation on the grounds that plaintiff is a charitable institution. Count II alleged that one of plaintiff's six parcels of land had been assessed, taxed and paid for tax year 1972 and requested the court to permanently enjoin the collection of this one back tax bill on the grounds that the tax had been paid. Defendants stipulated to the facts alleged in count II in their answer. At the close of a bench trial, the trial court entered an order in favor of plaintiff as to both counts. Defendants appeal from that part of the order pertaining to count I, arguing that the order is contrary to the manifest weight of the evidence and contrary to law.

We reverse.

The record discloses the following pertinent facts. Plaintiff, Plymouth Place, Inc. (hereinafter referred to as Plymouth) is a not-for-profit corporation organized under Illinois law. Plymouth is located in LaGrange Park, Illinois, on 15 acres of land and is licensed to operate as a nursing home. As stated in their bylaws, Plymouth's corporate purpose is "to establish and maintain a home for elderly persons who are members of Protestant Christian churches * * *." Plymouth is managed by a Board of Directors that has final authority to admit or reject applicants. In general, applicants must be at least 60 years of age, in good physical and mental health for their age, and of good moral character.

Upon being admitted to Plymouth, a resident executes a written contract that provides for the payment, by the admittee of an initial Foundation fee and fixed monthly fees thereafter. Although the Foundation fee varies, apparently according to the particular resident's ability to pay, it is rarely below $10,000. Further, a person who desires to live in a two-room suite is required to pay a Foundation fee that is approximately twice as much as a person who desires a single room.

In exchange for these payments, residents receive meals, lodging, water, electricity, care of the grounds and living unit, hobbies and

infirmary care. However, doctors' fees and any special nursing care are to be paid by the resident, not Plymouth.

Finally, a review of Plymouth's income tax returns for the relevant years in question reveals that 85-97% of Plymouth's expenses are paid for out of residents' fees. However, 5% to 10% of the residents are unable to pay these fees. While nothing in the corporate charter, the bylaws, or the written contract executed between Plymouth and its residents prevents Plymouth from ejecting such residents, these persons have been accepted and maintained by Plymouth in the past.

At the close of all the testimony, the trial judge, relying primarily on the fact that Plymouth has chosen not to eject those residents who are unable to pay the required fees, held that Plymouth is a charitable institution and entitled to tax exempt status.

On appeal defendants argue that the finding of the trial judge must be reversed inasmuch as Plymouth's purpose and function is not primarily charitable, but rather is designed to cater to those persons who can pay for the services rendered. We agree.

In determining whether Plymouth's property was used "exclusively" for charitable purposes pursuant to section 19.7 of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 500.7) for tax years 1970 through 1975, it is important to know that the Illinois Supreme Court has construed "exclusively used," in this context, as meaning the "primary purpose for which property is used and not any secondary or incidental purpose." (*Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 157, 233 N.E.2d 537, 541-42.) While noting the difficulty of defining a charitable institution, the court proceeded to establish guidelines for determining whether an institution qualifies for such status:

> "It has been stated that a charity is a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, persuading them to an educational or religious conviction, for their general welfare—or in some way reducing the burdens of government (*Crerar v. Williams*, 145 Ill. 625); that the distinctive characteristics of a charitable institution are that it has no capital, capital stock or shareholders, earns no profits or dividends, but rather derives its funds mainly from public and private charity and *holds them in trust for the objects and purposes expressed in its charter*, (*People ex rel. Cannon v. Southern Illinois Hospital Corp.*, 404 Ill. 66; *People ex rel. Hellyer v. Morton*, 373 Ill. 72; *Congregational Sunday School and Publishing Society v. Board of Review*, 290 Ill. 108); that a charitable and beneficent institution is one which dispenses charity to all who need and apply for it, does not provide gain or profit in a private sense to any person connected with it, and does not appear to place obstacles of any

character in the way of those who need and would avail themselves of the charitable benefits it dispenses, (*Sisters of Third Order of St. Francis v. Board of Review*, 231 Ill. 317); that the statements of the agents of an institution and the wording of its governing legal documents evidencing an intention to use its property exclusively for charitable purposes do not relieve such institution of the burden of proving that its property actually and factually is so used, (*Skil Corp. v. Korzen*, 32 Ill. 2d 249; *People ex rel. Pearsall v. The Catholic Bishop of Chicago*, 311 Ill. 11); and that the term 'exclusively used' means the primary purpose for which property is used and not any secondary or incidental purpose. These principles constitute the frame of reference to which we must apply plaintiff's use of its property to arrive at a determination of whether or not such use is in fact exclusively for charitable purposes." (39 Ill. 2d 149, 156-57.)

Other cases have cited these guidelines with approval. See *Small v. Pangle* (1975), 60 Ill. 2d 510, 515, 328 N.E.2d 285, 288, and *People ex rel. Nordlund v. Association of The Winnebago Home for the Aged* (1968), 40 Ill. 2d 91, 100-01, 237 N.E.2d 533, 539.

A review of the facts in the present case reveals that Plymouth does not comply with these guidelines or other cases construing section 19.7 of the Revenue Act of 1939.

Plymouth's first area of nonconformity with the guidelines articulated in *Methodist Old Peoples Home* is its method of financing operations. Under the guidelines, funds must be derived "mainly from public and private charity." However, an inspection of Plymouth's tax returns for the 1970-1975 period reveals that 85-97% of its funding comes from residents' fees. In *Small v. Pangle* (1975), 60 Ill. 2d 510, 515, 328 N.E.2d 285, 288, a case very similar to the one at present, the supreme court relied on the fact that funds were not derived primarily from public and private charities in concluding that a charitable institution did not exist.

A second deviation from the guidelines articulated in *Methodist Old Peoples Home* arises from the practice of requiring applicants to submit detailed statements as to their health, financial and personal history as a condition for acceptance. This requirement, plus the fact that applicants must be in good physical condition for their age, contravenes the requirement expressed in *Methodist Old Peoples Home* that no obstacles be placed in the way of those persons seeking the charitable benefits of the institution. In fact, this precise issue was addressed in *Methodist Old Peoples Home*:

> "It is undisputed that plaintiff's corporate structure and its abstinence from profit making in a private sense are akin to that of a charitable institution. However, the variance between its stated

chartered purpose of providing 'proper accommodations and care for the sick and homeless aged;' and the health requirements contained in its bylaws that 'applicants shall be in good mental, emotional and physical health, and free of any communicable disease,' militates strongly against the requirement that it hold property in trust for the objects and purposes expressed in its charter." (39 Ill. 2d 149, 157-58, 233 N.E.2d 537, 542.)

Furthermore, the fact that most applicants are required to pay a substantial Foundation fee (an average of $10,000 or more), clearly represents an "obstacle" to the receipt of benefits offered by Plymouth. In *People ex rel. Nordlund v. Association of The Winnebago Home for the Aged* (1968), 40 Ill. 2d 91, 237 N.E.2d 533, the supreme court found the presence of stringent health and admission fee requirements, such as those in the present case, sufficient reason for concluding that a charitable institution did not exist.

> "Defendant's insistence upon the payment of a sizeable admission fee, the assignment by a resident of his assets and the health requirements imposed, constitute an even more serious impediment to the tax exempt status it seeks. We find that these provisions cannot be reconciled with our requirements of the application of benefits to an indefinite number of people, dispensing charity to all who need and apply for it and not appearing to place obstacles of any character in the way of those who need and would avail themselves of the benefits defendant provides." 40 Ill. 2d 91, 101, 237 N.E.2d 533, 539.

Finally, if one reads Plymouth's bylaws, one is struck by the absence of any expressed charitable purpose:

> "The object for which it [Plymouth Place, Inc.] is formed is to establish and maintain a Home for elderly persons who are members of Protestant Christian churches, and primarily for the persons who are members of churches which are members of the United Church of Christ, and persons who are members of Congregational Christian churches. For said object it is a further function of the corporation to receive gifts, devises and bequests of real and personal property, to execute trusts and to hold, buy, manage, sell, exchange and lease real and personal property."

Plymouth argues that while its charter and bylaws do not require that it accept applicants or maintain residents who cannot pay the required fees, the fact that it has accepted such persons is sufficient to establish it as a charitable institution. This argument is without merit. In *Willows v. Munson* (1969), 43 Ill. 2d 203, 251 N.E.2d 249, the supreme court indicated that the bylaws must mandate that applicants who cannot pay the required fees be accepted. Consequently Plymouth's discretionary

acceptance of a few applicants who cannot pay the required fees (approximately 5% of the residents) is insufficient to establish it as a charitable institution.

For the foregoing reasons, it is our decision that the order of the circuit court of Cook County pertaining to count I of plaintiff's complaint be reversed.

Order reversed.

GOLDBERG, P. J. and O'CONNOR, J., concur.