GAS RESEARCH INSTITUTE, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant.

First District (2nd Division)   No. 86—0994

Opinion filed March 31, 1987.—Rehearing denied April 28, 1987.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Imelda R. Terrazino, Assistant Attorney General, of Chicago, of counsel), for appellant.

Jenner & Block, of Chicago (Paula Cozzi Goedert, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

The Department of Revenue (Department) appeals the circuit court's reversal of its administrative finding that the Gas Research Institute was not entitled to a purchaser's charitable tax exemption from the Illinois sales tax. Ill. Rev. Stat. 1983, ch. 120, par. 441.

Plaintiff, Gas Research Institute (GRI), is a not-for-profit corporation organized in 1976 in response to the energy crisis of the early 1970s with the stated purpose of funding, encouraging, and conducting research and development of natural gas resources and uses. It has been exempted from Federal taxation and Illinois income tax as a charitable, educational, or scientific organization and is funded through a congressionally authorized $.01-per-unit surcharge on interstate pipeline transfers of natural gas; the surcharge is passed directly on to consumers. GRI also receives royalties and licensing fees from products which it develops and markets to manufacturers and distributors. All licensing and royalty funds received by GRI are put back into research and development.

Products developed and marketed by GRI include: (1) a "burner insert" which reduces emissions in home furnaces; (2) a "ladle heater" which has reduced gas consumption by the steel industry; (3) a "post-combustion furnace" which has a 95% efficiency rating and saves homeowners with gas heat from $200 to $300 per year; (4) a "rock fracturing" technique which makes more natural gas accessible; and (5) a test for detecting gas leaks in residential furnaces and heat exchangers. GRI ranks proposed projects on the basis of ultimate benefit to the consumer, cost, practicality, and feasibility in order to allocate research money. The results of its research are made known through publication by the National Technology Information Service, sponsored by the United States Department of Commerce.

GRI possessed a sales tax exemption prior to September 29, 1983, apparently as a charitable not-for-profit corporation. On that date, it responded to a letter from the Department of Revenue (Department) which had questioned its tax exemption. On February 16, 1984, the Department, responding to GRI's letter, stated that it was not entitled to a tax exemption. On March 6, 1984, GRI requested a hearing on the "revocation" of its exempt status.

A hearing was held on June 14, 1984, at which GRI presented a number of exhibits. William Burnett, vice-president of GRI, appeared as the only witness. On July 11, 1984, GRI submitted a "supplemental brief" to the Department. Thereafter, the Department hearing officer found "that the end result of [GRI]'s research is to make gas products *** more competitive in the energy market" and "that the primary

benefit of [its] activity [inures] to the gas industry with the public, at best, incidental beneficiaries." The hearing officer then held that he was "not persuaded that [GRI]'s activity, however meritorious, should be subsidized by the people's tax dollars and therefore recommend[ed] that the denial of tax exempt status to Gas Research Institute by the Department of Revenue be sustained." On April 1, 1985, the Director of Revenue accepted the hearing officer's recommendation and issued an order sustaining the denial of tax exempt status to GRI.

On May 2, 1985, GRI timely filed a complaint in the circuit court of Cook County seeking administrative review (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*) contending that the decision was "not in accordance with law." Following an exchange of memoranda, the circuit court reversed the Department's decision and, on March 17, 1986, ordered an exemption issued to GRI. The court found that the administrative decision too harshly tested the benefit conveyed to the public by GRI and that the accrual of benefits to the gas industry did not automatically preclude the transfer of benefits to the public at large as well. The Department appeals.

The Department contends that the circuit court erred and that it correctly revoked GRI's retail sales tax exemption after finding that the primary benefit of its activities inured to the gas industry and that the public was only an incidental beneficiary.

■ Section 3—110 of the Code of Civil Procedure concerning administrative review (Ill. Rev. Stat. 1983, ch. 110, par. 3—110) provides that the Department's factual findings and conclusions are to be considered *prima facie* true and correct by the circuit court. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391, 469 N.E.2d 1085; *Hammond v. City of Chicago* (1985), 139 Ill. App. 3d 98, 101, 487 N.E.2d 87.) The circuit court's review is limited to determining whether the Department's finding was against the manifest weight of the evidence or whether its authority was exercised in an arbitrary and capricious manner (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391); the court, however, is not bound by the Department's application or conclusions of law (*Board of Education v. Educational Labor Relations Board* (1986), 143 Ill. App. 3d 898, 906-07, 493 N.E.2d 1130). In reviewing the administrative decision, the circuit court may not substitute its judgment for that of the Department (*Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 153, 365 N.E.2d 322; *Green v. Edgar* (1986), 151 Ill. App. 3d 163, 167, 502 N.E.2d 1193; *Board of Education v. Educational Labor Relations Board* (1986), 143 Ill. App. 3d 898, 906-07); the reasonableness or attractiveness of an opposite or alternative result is not a sufficient basis upon which to warrant judicial

reversal of the Department's decision (*Agans v. Edgar* (1986), 142 Ill. App. 3d 1087, 1093, 492 N.E.2d 929; *O'Boyle v. Personnel Board* (1983), 119 Ill. App. 3d 648, 653, 456 N.E.2d 998). In order to set aside the findings of the Department as against the manifest weight of the evidence, the court must necessarily find the opposite conclusion clearly evident from the evidence presented. *Agans v. Edgar* (1986), 142 Ill. App. 3d 1087, 1093, 492 N.E.2d 929; *United Air Lines, Inc. v. Fair Employment Practices Com.* (1979), 69 Ill. App. 3d 519, 523, 387 N.E.2d 875.

In the case *sub judice*, the circuit court did not explicitly find that the Department's decision was against the manifest weight of the evidence. Nevertheless, the reversal of the Department's decision was premised on the circuit court's finding that GRI conferred its primary benefit onto the public at large and not merely incidentally as the Department had found. Such a finding is one of fact, necessarily implicating the Department's decision as one against the manifest weight of the evidence.

■■ ■ The circuit court concluded that GRI was entitled to a charitable sales tax exemption premised upon the nature of what it perceived to be GRI's primary benefit and the conferring of that benefit onto the public. A statute which exempts property or an entity from taxation must be strictly construed in favor of taxation and against exemption; the exemption claimant must prove clearly and conclusively its entitlement. (*Board of Certified Safety Professionals of the Americas, Inc. v. Johnson* (1986), 112 Ill. 2d 542, 547, 494 N.E.2d 485; *People ex rel. County Collector v. Hopedale Medical Foundation* (1970), 46 Ill. 2d 450, 462, 264 N.E.2d 4; *People ex rel. Nordlund v. Association of the Winnebago Home for the Aged* (1968), 40 Ill. 2d 91, 99, 237 N.E.2d 533.) Analyzing an exemption, all facts are to be construed and all debatable questions resolved in favor of taxation. *Board of Certified Safety Professionals of the Americas, Inc. v. Johnson* (1986), 112 Ill. 2d 542, 547, 494 N.E.2d 485; *People ex rel. County Collector v. Hopedale Medical Foundation* (1970), 46 Ill. 2d 450, 462-63, 264 N.E.2d 4; *People ex rel. Nordlund v. Association of the Winnebago Home for the Aged* (1968), 40 Ill. 2d 91, 99-100, 237 N.E.2d 533.

■ GRI contends that its purpose qualifies as charitable and it should therefore be exempt from sales tax. Section 2 of "An Act in relation to a tax upon persons engaged in the business of selling tangible personal property to purchasers for use or consumption" (Act) (Ill. Rev. Stat. 1983, ch. 120, par. 441) provides, in part:

"A tax is imposed upon persons engaged in the business of

selling tangible personal property at retail at the rate of 5% of the gross receipts from such sales of tangible personal property made in the course of such business, excluding, however, *** the proceeds of such sales *** to any corporation, society, association, foundation, or institution organized and operated exclusively for charitable, religious or educational purposes ***."

The Illinois Administrative Code similarly provides (7 Ill. Admin. Code 130.2005(d)(2) (1985)):

"[T]he tax does not apply to receipts received by the seller from sales of any kind made to any purchaser *** who is able to qualify as a corporation, society, association, foundation or institution organized and operated exclusively for charitable, religious or educational purposes."

The charitable purpose of the qualifying entity is represented by actions, consistent with existing law, undertaken for the benefit of an indefinite number of persons, for the general welfare, or which in some way reduce the burdens of government. *People ex rel. Nordlund v. Association of the Winnebago Home for the Aged* (1968), 40 Ill. 2d 91, 100, 237 N.E.2d 533; *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 156-57, 233 N.E.2d 537.

■ A charitable purpose refers to almost anything which promotes the well-being of society and is not forbidden by law. To qualify as a charity, the purchaser must be organized and operated to benefit an indefinite number of people; there may be restrictions to the group benefited, but the service rendered to those eligible must act to relieve the public of an obligation, moral or economic, which it would otherwise have to such beneficiaries or it must confer some general benefit onto the public. (7 Ill. Admin. Code 130.2005(i)(2) (1985).) The law recognizes as charitable those activities which benefit an indefinite number of persons through the exercise of specific educational or religious influences, engaging in public works or by otherwise lessening the burden upon the State to care for or advance the interests of its citizens. *American College of Surgeons v. Korzen* (1967), 36 Ill. 2d 340, 347-48, 224 N.E.2d 7, overruled on a limited and inapplicable part by *Christian Action Ministry v. Department of Local Government Affairs* (1978), 74 Ill. 2d 51, 57, 383 N.E.2d 958; *Milward v. Paschen* (1959), 16 Ill. 2d 302, 311, 157 N.E.2d 1.

The distinctive characteristics of a charitable institution are that it has no capital, capital stock or shareholders, earns no profits or dividends, but rather derives its funds primarily from public and private charity. (*People ex rel. Nordlund v. Association of the Winnebago Home for the Aged* (1968), 40 Ill. 2d 91, 100-01, 237 N.E.2d 533.) In

this instance, there is no dispute that GRI's capital structure fits within the distinctive characteristics of a charitable institution. The Department, however, contends that the source of GRI's funding, which is derived from a surcharge on gas transfers and which is ultimately borne by natural gas consumers, is not public or private charity. In contrast, the supreme court has diminished the importance of funding source characteristics, instead focusing upon the purpose and use for which those funds are collected. *American College of Surgeons v. Korzen* (1967), 36 Ill. 2d 340, 348, 224 N.E.2d 7; *Cf. Board of Certified Safety Professionals of the Americas, Inc. v. Johnson* (1986), 112 Ill. 2d 542, 546-47, 494 N.E.2d 485.

■ An exclusively charitable purpose need not be interpreted literally as the entity's sole purpose; it should be construed to mean the primary purpose, but not a merely incidental or secondary purpose or effect. (*People ex rel. Nordlund v. Association of the Winnebago Home for the Aged* (1968), 40 Ill. 2d 91, 101, 237 N.E.2d 533.) If a substantial purpose or activity of the claimant is not charitable, religious, or educational, it cannot be said to be organized and operated exclusively for charitable, religious, or educational purposes within the meaning of the Act. (7 Ill. Admin. Code 130.2005(n)(2) (1985).) The Department will hold not-for-profit corporations organized and operated exclusively for the purpose of conducting scientific research of a character beneficial to the public to be charities within the meaning of the Act. (7 Ill. Admin. Code 130.2005(k)(1) (1985).) GRI insists that it is such a qualifying, not-for-profit corporation. The issue facing this court, however, is whether the circuit court erred by impliedly finding that the Department's ruling was against the manifest weight of the evidence.

The record facts in the instant case clearly support the Department's finding against GRI's charitable status and, therefore, against its tax exemption. According to its articles of incorporation, GRI "is organized exclusively for scientific and educational purposes *** in order to assist all segments of the gas industry in meeting the critical demands for energy and raw materials of the United States by providing adequate, reliable, safe, economical, and environmentally acceptable gas service to the benefit of the public."

■ GRI was organized by members of the natural gas industry and is overseen and operated by members of the industry. Its primary purpose is to enhance the position of natural gas in the energy marketplace. The Department ruled that any benefits to the public arise incidentally through GRI's efforts to make natural gas more appealing to consumers and that this mere incidental purpose, or in this case ef-

fect, was not the primary or even a substantial purpose of GRI. Accordingly, GRI was denied a tax exemption. A contrary holding is not clearly evident from the facts and the Department's decision was not against the manifest weight of the evidence; GRI does not contend that the holding was arrived at arbitrarily or capriciously.

The circuit court substituted its judgment on the facts for that of the Department on purely philosophical grounds. The court noted that "[r]esearch by [GRI] *** does not lend itself to an immediate windfall to the public." Rather, the court analogized, "[l]ike the stone cast into the water, the ripple effect of [GRI's] research will have a discernible and positive effect on the general welfare." Contrary to the circuit court's ultimate ruling, however, such indirect, yet discernible and positive effect is not the primary or substantial purpose or effect necessary to warrant the granting of a charitable tax exemption. This indirect conference of a benefit upon the general public as recognized by the circuit court is essentially incidental; a finding opposite to that of the Department is not clearly evident, nor was the Department's ruling against the manifest weight of the evidence. Mere preference for an opposite result premised upon an alternative opinion does not provide a proper basis for reversing the Department's ruling under administrative review. (*Green v. Edgar* (1986), 151 Ill. App. 3d 163, 168, 502 N.E.2d 1193.) The creation of an exemption for organizations such as GRI must be addressed to the legislature for its establishment.

The circuit court's decision reversing the Department's ruling was in error therefore and must be reversed. The Department's ruling is reinstated.

Reversed.

SCARIANO, P.J., and STAMOS, J., concur.