34 N.Y.2d 143 (1974)
In the Matter of the Association of the Bar of the City of New York, Respondent,
v.
Richard Lewisohn, as Finance Administrator of the City of New York, et al., Appellants.
In the Matter of the Explorers Club, Respondent,
v.
Richard Lewisohn, as Finance Administrator of the City of New York, et al., Appellants.
Court of Appeals of the State of New York.
Argued March 28, 1974.
Decided May 8, 1974.
Norman Redlich, Corporation Counsel (Edith I. Spivack, Stanley Buchsbaum and Russell D. Scott of counsel), for appellant in the first above-entitled proceeding.
M. Bernard Aidinoff, Michael M. Maney, Stephen R. Watson and Israel Hoffman for respondent in the first above-entitled proceeding.
Norman Redlich, Corporation Counsel (Edith I. Spivack, Stanley Buchsbaum and Russell D. Scott of counsel), for appellant in the second above-entitled proceeding.
Richard Steel for respondent in the second above-entitled proceeding.
Louis J. Lefkowitz, Attorney-General (Julius Greenfield, Samuel A. Hirshowitz, Bernard Toomin and Sharon Cuff Slater of counsel), pro se, in his statutory capacity under section 71 of the Executive Law and CPLR 1012 (subd. b), intervenor-respondent.
Chief Judge BREITEL and Judges GABRIELLI, JONES, WACHTLER and RABIN concur; Judge STEVENS taking no part.
*149 JASEN, J.
The common issue on these appeals is whether the properties of petitioners, Association of the Bar of the City of New York and the Explorers Club, qualify for the exemption from real property taxes provided by constitution and statute for property owned by a charitable or educational organization and used exclusively for such purposes. If not, a further issue is whether the legislation purportedly permitting the return of petitioners' properties to the tax rolls of the City of New York violates due process or equal protection of the law. In each case the Appellate Division has sustained petitioners' entitlement to the exemption. We reverse and uphold the constitutionality of the challenged statute. (Real Property Tax Law, § 421.)
The Association of the Bar of the City of New York was incorporated in 1871 by an act of the Legislature. (L. 1871, ch. 819, as amd. by L. 1924, ch. 134.) Its purposes, as stated in that act as amended and in the Association's constitution, include "cultivating the science of jurisprudence, promoting reforms in the law, facilitating the administration of justice, elevating the standard of integrity, honor and courtesy in the legal profession and cherishing the spirit of brotherhood among the members thereof." Membership in the Association is open to any member of the legal profession, subject to recommendation by the Committee on Admissions, and election by a majority of the Executive Committee.
A principal activity of the Association is maintaining a law library. A large measure of the Association's activities is carried on through its various standing and special committees. The Standing Committee on the Judiciary considers the qualifications and makes recommendations with respect to candidates for judicial office. The Standing Committee on Grievances considers and investigates charges of misconduct against any member of the Association, and, in certain circumstances, other attorneys. It also investigates the unauthorized practice of *150 law. Expenses of this committee are reimbursed to a maximum of 50% by the City of New York, subject to the approval of the Appellate Division in the First Judicial Department. Various standing court committees monitor the performance of the courts and investigate the qualifications of judicial candidates and the conduct of judicial officers. Other committees, organized generally according to substantive law areas, review and make recommendations on pending legislation, advise and appear before various public bodies, and in co-operation with the Committee on Post-Admission Legal Education, arrange for lectures and instructional programs. Other committees are concerned with legal assistance for indigents, lawyer referral service and entertainment.
The property of the Association, subject to review, consists of two adjacent parcels on West 44th Street between Fifth Avenue and the Avenue of the Americas in the Borough of Manhattan. Situate on one is a four-story structure, the House of the Association, used in its entirety by the petitioner; and on the other, the Bar Building, occupied in part and commercially leased in part. Since 1927, when legislation was enacted expressly exempting property used for Bar Association purposes from the real property tax (L. 1927, ch. 565), petitioner has enjoyed such exemption for the House of the Association parcel. The Bar building parcel, acquired in 1940, was later granted a similar exemption to the extent that it was used for the Bar Association's purposes. Such exemptions continued until January 1, 1972, when, pursuant to statute and local law, later to be discussed, they were terminated and the properties returned to the real property tax rolls by the Tax Commission of the City of New York.
The Explorers Club was organized in 1905 as a not-for-profit corporation under the former Membership Corporation Law. Its purposes, as set forth in the original certificate of incorporation, amended in 1964, are, generally stated, to further and to spread knowledge of general exploration, and to acquire and to maintain a library of exploration and travel and a map collection relating to explorers and their work. Membership consists of three classes: fellows (explorers), members (those interested in exploration), and student members (persons aged *151 16-24 enrolled as full-time students in accredited institutions of learning).
Current activities of the Club include maintenance of its extensive library devoted to works of exploration and the field sciences. Operational activities center on geographic exploration and research in the earth sciences. Through its Exploration Fund, the Club furnishes financial support in the form of exploration grants, and sponsors and otherwise encourages scientific expeditions involving field research and exploration. Through its education program, geared primarily to high school age students, the Club provides instruction and counselling in exploration and the field sciences, places students in expedition and field research projects, and, in co-operation with Federal agencies and private sources, provides financial assistance for such activities. Its Environment Committee furnishes financial support and consultive services for a variety of conservation and ecological projects undertaken by the Club.
The property of the petitioner Explorers Club, here under review, is located on 70th Street in the vicinity of Park Avenue, Borough of Manhattan. Located thereon is a six-story building entirely occupied by the Club. Since acquisition in February, 1964, the property has enjoyed an exemption from the real property tax as devoted exclusively to scientific purposes. Like petitioner in the companion case, effective January 1, 1972, this exemption was revoked and the property restored to the real property tax rolls.
By virtue of former section 420 of the Real Property Tax Law, the Association of the Bar and the Explorers Club enjoyed for many years an exemption of right from taxation for their Manhattan properties; the former by virtue of its status and use of the property for Bar Association purposes, and the latter by virtue of its status and use of its property for scientific purposes.[1] An amendment to section 420 (subsequently renumbered and now section 421), effective January 1, 1972 (L. 1971, ch. 414), continued such exemptions for Bar Associations, *152 scientific groups and certain other nonprofit organizations, but permitted the appropriate local government to terminate the exemption by local law.[2]
In effect, the continuation of such exemptions became a matter of grace with local governments. Pursuant to this grant of authority, the City of New York adopted Local Law No. 46 of 1971 providing, in pertinent part, that, as of January 1, 1972, real property of a corporation or association organized exclusively for scientific or Bar Association purposes and used exclusively for such purposes shall be taxable.[3] In accordance with this enactment, petitioners were notified that their respective properties were being returned to the tax rolls effective January 1, 1972.
*153 Petitioners argue on this appeal that they are entitled to an exemption from real estate taxes for the reason that their activities are by their very nature charitable or educational. We begin with the proposition that to qualify for exemption under section 421, it is necessary, first, that the corporation or association seeking exemption be organized exclusively for one or a combination of the denominated statutory purposes; and, second, that the property be devoted exclusively to such use. (Gospel Volunteers v. Village of Speculator, 29 N Y 2d 622, at pp. 624, 625 [SCILEPPI, J., dissenting].) And while exemption statutes should be construed strictly against the taxpayer seeking the benefit of the exemption, an interpretation so literal and narrow that it defeats the exemption's settled purpose is to be avoided. (People ex rel. Watchtower Bible & Tract Soc. v. Haring, 8 N Y 2d 350, 358.) Accordingly, "exclusive", as used in the context of these exemption statutes, has been held to connote "principal" or "primary". (People ex rel. Untermyer v. McGregor, 295 N Y 237, 243-244; People ex rel. Watchtower Bible & Tract Soc. v. Haring, 8 N Y 2d 350, 354, 358, supra; Crusade for Christ v. Town of New Lebanon, 36 A D 2d 247, 250-251, affd. 31 N Y 2d 765.) Hence, purposes and uses merely auxiliary or incidental to the main and exempt purpose and use will not defeat the exemption. (People ex rel. Untermyer v. McGregor, supra; People ex rel. Watchtower Bible & Tract Soc. v. Haring, supra; Matter of St. Luke's Hosp. v. Boyland, 12 N Y 2d 135, 143; Greater N. Y. Corp. of Seventh Day Adventists v. Town of Dover, 29 A D 2d 861, app. dsmd. 23 N Y 2d 682.)
Applying these guidelines to the facts before us, we conclude that petitioners' properties do not qualify for exemption. The Association of the Bar of the City of New York is not organized and conducted primarily for charitable or educational purposes. It is an association of professionals organized for traditional Bar Association purposes and primarily concerned with the professional interests of its members. While it has functions and attributes properly characterizable as educational and, to a somewhat lesser extent, as charitable, these are incidental and peripheral only. By way of example, its educational activities, while not reserved to professionals, are predominantly professional in nature and orientation and *154 designed to advance the interests and standing of its members. Nor does the Association's extensive library, important and valuable as it is, alter its essential character. (Cf. Matter of De Peyster, 210 N.Y. 216.)
To be sure, the Association confers a public benefit, and a great one, through its laudable activities in the screening of judicial candidates, rooting out the unauthorized practice of law, processing of grievances against lawyers, and timely commenting on issues of broad public concern, to name but a few. But public benefit is not the test of qualification for exemption, as the legislative history of section 421, discussed hereinafter, makes so abundantly clear. Thus it is, too, that in this context, decisions acknowledging the charitable or educational character of Bar Associations in other contexts for other explicit and distinguishable purposes (e.g., Dulles v. Johnson, 273 F.2d 362, cert. den. 364 U. S. 834; St. Louis Union Trust Co. v. United States, 374 F.2d 427; Stearns v. Association of Bar of City of N. Y., 154 Misc. 71; but see Matter of Smith [Brooklyn Bar Assn.], 266 App. Div. 1038, affd. 292 N.Y. 593) are unpersuasive.
Then, too, of some significance, although by no means determinative, is the fact that since 1927 Bar Associations have been characterized separately by the Legislature for exemption purposes. For these many years the Association has enjoyed tax exempt status by virtue of this special category never having sought exemption, pre or post 1927, under the broader categories for charitable or educational organizations.
So it is also with the Explorers Club. As its charter and its activities demonstrate, it is an organization not conducted for purposes primarily charitable or educational, but for scientific purposes, as those terms are commonly understood. To be sure, it has charitable and educational attributes and functions. Indeed, the educational aspects of its current endeavors  for example, the field science lecture series  are laudatory and not insubstantial. But they are, in the final analysis, adjunctive to its primary scientific purpose  to promote exploration and research principally in the earth sciences. Similarly, the aspects of its operation properly characterizable as charitable are incidental to this overriding purpose. That this organization *155 confers a public benefit is not to be denied. But, again, public benefit is not the test of qualification for exemption. And while research oriented activities may result in an educational benefit, the Explorers Club is not organized and conducted primarily for educational purposes in the traditional sense of that term.
Nor is it to be overlooked that for some years the Legislature has chosen to classify scientific organizations separately, obviously conceiving a distinction between an organization conducted primarily for scientific purposes and one conducted primarily for charitable or educational purposes, as those terms accord with common usage. Of interest is the fact that the Explorers Club has since 1964 been exempted from taxation as a scientific organization and that it has not heretofore claimed exemption as an organization conducted primarily for charitable or educational purposes.
This analysis is confirmed by the legislative history of section 421 of the Real Property Tax Law, as amended. (L. 1971, ch. 414.) In its report (N. Y. Legis. Doc., 1970, No. 15), the Joint Legislative Committee to Study and Investigate Real Property Tax Exemptions observed that exemptions in this century have proliferated at an alarming rate. It was estimated that in 1967 more than 30% of the assessed value of all real property in the State was exempt from taxation for various reasons. (P. 24.) In the City of New York, the percentage was higher  33.2% (p. 25); and in certain other communities, still higher  upwards of 75% (p. 28). Nonprofit organizations alone accounted for roughly 18% of all exempt real property listed on assessment rolls in 1967 (pp. 32-33). Were the growth of exempt properties to continue at the rate established during the first half of this century, it was estimated that by 1985 one half of all real property on the tax rolls of local governments would be exempt from taxation (pp. 35-36).
Against this background, the Legislature enacted chapter 414 of the Laws of 1971. Its purpose was clear  to stem the erosion of municipal tax bases by permitting local governments to terminate exemptions for nonprofit organizations other than those conducted exclusively for religious, educational, charitable, *156 hospital or cemetery purposes.[4] Mindful of this legislative purpose and the principle that exemption statutes are construed strictly against the taxpayer, we are reinforced in the view that neither the Association of the Bar of the City of New York nor the Explorers Club qualifies for exemption under the categories recognized by constitution, statute and local law.
Passing then to the next principal issue, we perceive no infirmity in section 421 of the Real Property Tax Law under the due process and equal protection clauses of the Federal and State Constitutions. The State has great freedom in selecting the subjects of taxation and in granting exemptions and neither the due process clause nor the equal protection clause imposes any rigid limitations upon the State's power to devise reasonable tax policies. (Lehnhausen v. Lake Shore Auto Parts Co., 410 U. S. 356, 359, 364; Madden v. Kentucky, 309 U. S. 83, 88; Carmichael v. Southern Coal Co., 301 U. S. 495, 509; Magnano Co. v. Hamilton, 292 U. S. 40, 44; Matter of Roosevelt Raceway v. County of Nassau, 18 N Y 2d 30, 39, app. dsmd. 385 U. S. 453; Ampco Print.-Advertisers' Offset Corp. v. City of New York, 14 N Y 2d 11, 24, appd. dsmd. 379 U. S. 5; People ex rel. Bridge Auth. v. Davis, 277 N.Y. 292, 298.)
Classification traditionally has been an accepted device for accommodating tax programs to local needs in order to achieve an equitable apportionment of the tax burden. In this regard, the equal protection clauses proscribe only palpably arbitrary or invidious classifications (Allied Stores of Ohio v. Bowers, 358 U. S. 522, 530) and if any state of facts reasonably may be conceived to justify a particular classification or exemption from taxation, it must be upheld. (Matter of Roosevelt Raceway v. County of Nassau, supra, at p. 39; Ampco Print.-Advertisers' Offset Corp. v. City of New York, supra, at p. 24; People ex rel. Hatch v. Reardon, 184 N.Y. 431, 445, affd. 204 U. S. 152; cf. McGowan v. Maryland, 366 U. S. 420, 426.)
The Legislature has determined that the continuous removal of real property from the tax rolls imposes a particular hardship upon local government and the citizen-taxpayer; and that *157 the erosion of municipal tax bases must be stemmed. (L. 1971, ch. 414, § 1.) Accordingly, it has acted to permit local governments to limit the availability of exemptions for nonprofit organizations to those conducted principally for "religious, charitable, hospital, educational, moral or mental improvement of men, women or children or cemetery purposes". Exemptions for organizations conducted principally for scientific purposes or Bar Association purposes, once a matter of right, are now a matter of grace with local governments. In light of its findings, the Legislature could reasonably draw distinctions for exemption purposes between these properties and could reasonably conclude that the public benefit conferred by the latter did not warrant continued exemption as of right.
We have considered the other points urged on these appeals and deem further comment unnecessary other than to note that restoration of petitioners' properties to the tax rolls, effective January 1, 1972, was validly accomplished pursuant to the enabling legislation (L. 1971, ch. 414, § 7) and local law (Local Laws, 1971, No. 46 of City of New York). (Cf. Bronx Garment Center v. City of New York, Dept. of Finance, 199 Misc. 513, affd. 279 App. Div. 1048, mot. for lv. to app. den. 280 App. Div. 890.)
For the reasons stated, in Matter of Association of the Bar v. Lewisohn, the order of the Appellate Division should be reversed, with costs, and the petition dismissed. In Matter of the Explorers Club v. Lewisohn, the order of the Appellate Division should be reversed, with costs, and the judgment of the Supreme Court, New York County, dismissing the petition, reinstated.
In each case: Order reversed, etc.
NOTES
[1] Former section 420 (subd. 1) of the Real Property Tax Law exempted real property "owned by a corporation or association organized or conducted exclusively for * * * scientific * * * [or] bar association * * * purposes * * * and used exclusively for carrying out thereupon one or more of such purposes".
[2] "1. (a) Real property owned by a corporation or association organized or conducted exclusively for religious, charitable, hospital, educational or cemetery purposes, or for two or more of such purposes, and used exclusively for carrying out thereupon one or more such purposes either by the owning corporation or association or by another such corporation or association as hereinafter provided shall be exempt from taxation as provided in this section.

"(b) Real property owned by a corporation or association which is not organized or conducted exclusively for religious, charitable, hospital, educational or cemetery purposes, or for two or more such purposes, but which is organized or conducted exclusively for the moral or mental improvement of men and women or for bible, tract, benevolent, missionary, infirmary, public playground, scientific, literary, bar association, medical society, library, patriotic or historical purposes, for the enforcement of laws relating to children or animals, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes either by the owning corporation or association, or by another such corporation or association as hereinafter provided, shall be exempt from taxation; provided, however, that such property shall be taxable by any municipal corporation within which it is located if the governing board of such municipal corporation, after public hearing, adopts a local law, ordinance or resolution so providing" (Real Property Tax Law, § 420, renumbered § 421 [eff. April 1, 1972], as amd. by L. 1971, ch. 414).
[3] "1. Real property owned by a corporation or association which is not organized or conducted exclusively for religious, charitable, hospital, educational or cemetery purposes, or for two or more such purposes, but which is organized or conducted exclusively for the moral or mental improvement of men and women or for bible, tract, benevolent, missionary, infirmary, public playground, scientific, literary, bar association, medical society, library, patriotic or historical purposes, for the enforcement of laws relating to children or animals, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes * * * shall be taxable." (Local Laws, 1971, No. 46 of City of New York.)
[4] Chapter 529 of the Laws of 1972 added organizations for the "moral or mental improvement of men, women or children" to the list of exempt organizations.