## MINNESOTA STATE BAR ASSOCIATION v. COMMISSIONER OF TAXATION.

240 N. W. 2d 321.

March 12, 1976—No. 45699.

*Warren Spannaus,* Attorney General, and *Arthur J. Glassman,* Special Assistant Attorney General, for relator.

*Broeker & Bachman, John M. Broeker,* and *Steven R. Hedges,* for respondent.

PER CURIAM.

This case is before the court pursuant to a writ of certiorari issued to the Tax Court of the State of Minnesota. The commissioner of revenue issued an order denying the Minnesota State Bar Association's application for a certificate of exempt status for the purpose of the Minnesota sales and use tax, Minn. St. c. 297A. The Bar Association appealed to the Tax Court, which reversed the commissioner's order.

The issue presented to us is as follows: Is the Minnesota State Bar Association entitled to exemption from the Minnesota sales and use tax under Minn. St. 297A.25, subd. 1(p), as an organization "organized and operated exclusively for charitable * * * or educational purposes"?

At the time the commissioner of revenue issued his order, the Minnesota State Bar Association was an unincorporated association of lawyers. On July 2, 1973, the organization became a Minnesota nonprofit corporation. This change in form has no bearing on the organization's status in regard to the sales and use tax. Membership is voluntary and is limited for the most part to lawyers admitted to practice in the State of Minnesota.

The Minnesota State Bar Association (hereinafter MSBA) was formed in 1883. The constitution of MSBA states the organization's objects:

"1. To uphold and defend the Constitution and Laws of the

United States of America and of the State of Minnesota and to maintain representative government;

"2. To organize into one body the entire Bench and Bar of the State of Minnesota in the interests of the legal profession and of the public;

"3. To correlate the activities of the several affiliated bar associations in the state;

"4. To cooperate with the officers, committees, and sections of the American Bar Association; and to assist in effectuating its projects;

"5. To cultivate the study of jurisprudence, and its application to the administration of justice;

"6. To promote sound development of law;

"7. To facilitate the administration of justice;

"8. To maintain a high standard of ethics, integrity, honor and courtesy in the legal profession;

"9. To encourage a thorough and liberal legal education;

"10. To cherish a spirit of brotherhood among its members and to perpetuate their memory in the history of the profession."

MSBA works through a structure of several standing and special committees. The policies of the association are determined at an annual convention. A board of governors serves as the association's executive body. MSBA is supported primarily by annual dues which are assessed each member. A legislative committee reviews and recommends legislation to be sponsored by MSBA. Another committee makes recommendations regarding reforms in court rules. Other committees are concerned with legal aid, community relations, judicial compensation, the unauthorized practice of law, and a wide variety of other legal areas. MSBA maintains a client-security fund to make retribution to clients victimized by dishonest attorneys. The association publishes a monthly magazine, Bench and Bar, as its official organ. MSBA also provides its members with a group insurance plan which includes life insurance, major medical benefits, disability income coverage, and professional liability coverage.

That part of the sales and use tax statute which is at issue in this case is Minn. St. 297A.25, subd. 1(p), which states:

"Subdivision 1. The following are specifically exempted from the taxes imposed by sections 297A.01 to 297A.44:

\* \* \* \* \*

"(p) The gross receipts from the sale of tangible personal property to, and the storage, use or other consumption of such property by, any corporation, society, association, foundation, or institution organized and operated exclusively for charitable, religious or educational purposes."

Charitable tax exemptions recently were discussed by this court in North Star Research Institute v. County of Hennepin, 306 Minn. 1, 236 N. W. 2d 754 (1975), and Mayo Foundation v. Commr. of Revenue, 306 Minn. 25, 236 N. W. 2d 767 (1975). As noted in those cases, this court has not adopted a single definition of "charity," but has determined each exemption on the basis of the particular facts of each case. The primary test for exemption involves an analysis of the activities of the pertinent organization. MSBA is involved in legislative lobbying, supporting legal education, offering legal aid, maintaining a client defense fund, publishing a monthly group magazine, and providing its members with group benefits such as group insurance.

MSBA through its various committees reviews proposed and existing legislation. The Tax Court placed much emphasis on MSBA's support of legislation drawn in the public interest; e. g., prohibiting deceptive trade practices, prohibiting prejudgment garnishments, regulating collection agencies, the implied-consent law, modification of divorce law, the 1967 Human Rights Act, judicial discipline legislation, and providing free legal services to the indigent. MSBA members also have served as consultants to various legislative committees.

The two MSBA activities of most direct public benefit are the provision for legal aid and the maintenance of a client-security

fund. The legal aid is offered through Legal Assistance of Minnesota, an MSBA organization, and is available to those unable to pay for legal services. The security fund is available to protect clients from an attorney's malpractice.

The Tax Court found that MSBA has implemented and supported educational programs for the public and for attorneys. The "Children and the Law" series supported by MSBA is an example of a public education program.

MSBA argues that In re Junior Achievement of Greater Minneapolis, Inc. 271 Minn. 385, 390, 135 N. W. 2d 881, 885 (1965), established a flexible definition of "charity":

"The legal meaning of the word 'charity' has a broader significance than in common speech and has been expanded in numerous decisions. Charity is broadly defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons 'by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government.' "

MSBA also notes that the Tax Court found that the association is conducted without any view toward making a profit and that, for Federal tax purposes, it is exempt as a nonprofit organization.

We set out the following general criteria in North Star Research Institute v. County of Hennepin, 306 Minn. 1, 5, 236 N. W. 2d 754, 756:

"For the most part, the decisions of this court have dealt with organizations which were engaged in charitable undertakings in the traditional sense—care for the sick, the aged, and the infirm; education of young people; hospital care for the poor; facilities to promote the moral and educational welfare of youth; institutions for religious education. In these cases, assessment has been made of such factors as (1) whether the stated purpose

of the undertaking is to be helpful to others without immediate expectation of material reward; (2) whether the entity involved is supported by donations and gifts in whole or in part; (3) whether the recipients of the 'charity' are required to pay for the assistance received in whole or in part; (4) whether the income received from gifts and donations and charges to users produces a profit to the charitable institution; (5) whether the beneficiaries of the 'charity' are restricted or unrestricted and, if restricted, whether the class of persons to whom the charity is made available is one having a reasonable relationship to the charitable objectives; (6) whether dividends, in form or substance, or assets upon dissolution are available to private interests.

"The tendency of our decisions has been to sustain exemption where these traditionally 'charitable' objectives are being furthered, so long as no individual profits from ownership of the 'charity' are realized and so long as the undertaking is not a subterfuge by which the needs of a select and favored few are accommodated."

At the outset, we must say that since our continued existence as a democratic government depends upon our being faithful to the "rule of law," any organization that perpetuates our legal system should be highly commended. It remains imperative that such organizations exist. The bar associations in America have shouldered the main burden in effecting this purpose, but the test is whether the Minnesota bar association is organized and operated "exclusively for * * * charitable purposes." In State v. Willmar Hospital, Inc. 212 Minn. 38, 41, 2 N. W. 2d 564, 566 (1942), we noted that the phrase "purely public charity" in Minn. St. 272.02, subd. 1(6), was to be construed as meaning "wholly" or "exclusively."

A Federal case cited by the Tax Court in its memorandum defined "exclusively" in this context to mean that nonconforming activities are only incidental. See, St. Louis Union Trust Co. v. United States, 374 F. 2d 427, 431 (8 Cir. 1967). Cf. Mayo

Foundation v. Commr. of Revenue, 306 Minn. 25, 236 N. W. 2d 767 (1975).

Even under definition of "exclusively charitable" found in St. Louis Union Trust Co., MSBA is not entitled to tax exemption. The St. Louis case involved an estate tax on a bequest to the bar association of St. Louis. Public policy favors tax exemption for such bequests. Similarly, the other Federal case cited by the Tax Court, Dulles v. Johnson, 273 F. 2d 362 (2 Cir. 1959), certiorari denied, 364 U. S. 834, 81 S. Ct. 54, 5 L. ed. 2d 60 (1960), also involved an estate tax deduction for bequests to bar associations. The instant case arises in a different tax context. It is important to note that in the St. Louis case, Judge Blackmun stated:

"By no means does our holding necessarily indicate that all bar associations are charities * * * or that any particular association at all times would so qualify. Each case must be decided on its own and current facts. It is not difficult to imagine a situation where a bar association has exceeded the limitations of the statute." 374 F. 2d 440.

Other cases involving property taxes on professional associations have denied exemption. In Massachuetts Medical Society v. Assessors of Boston, 340 Mass. 327, 164 N. E. 2d 325 (1960), the Supreme Court of Massachusetts found:

"* * * Even the society's broader activities (world wide distribution of the journal, supervision of medical ethics, and educational services) are carried on primarily for the benefit of the medical profession. * * *

"There can be no doubt that the work of the society is most laudable; it is aimed at improving the knowledge and skills of the medical profession. That a more enlightened medical profession benefits the public cannot be gain-said. But this indirect benefit is not sufficient to bring the society within the class traditionally recognized as charities." 340 Mass. 332, 164 N. E. 2d 329.

The Massachusetts court cited Boston Chamber of Commerce

v. Assessors of Boston, 315 Mass. 712, 54 N. E. 2d 199, 152 A. L. R. 174 (1944), in which that court held that although the objectives of the chamber included the promotion of trade and commerce which the court recognized as "highly commendable and of great public benefit," 315 Mass. 718, 54 N. E. 2d 202, nevertheless, since the primary benefit would accrue to the business community rather than to the public, the chamber was not entitled to exemption. See, also, South Dakota State Medical Assn. v. Jones, 82 S. D. 374, 146 N. W. 2d 725 (1966).

A more recent case denied property tax exemption to a bar association. Association of the Bar of the City of New York v. Lewisohn, 34 N. Y. 2d 143, 153, 356 N. Y. S. 2d 555, 562, 313 N. E. 2d 30, 35 (1974), held:

"* * * The Association of the Bar of the City of New York is not organized and conducted primarily for charitable or educational purposes. It is an association of professionals organized for traditional Bar Association purposes and primarily concerned with the professional interests of its members. While it has functions and attributes properly characterizable as educational and, to a somewhat lesser extent, as charitable, these are incidental and peripheral only. By way of example, its educational activities, while not reserved to professionals, are predominantly professional in nature and orientation and designed to advance the interests and standing of its members. * * *

"To be sure, the Association confers a public benefit, and a great one, through its laudable activities in the screening of judicial candidates, rooting out the unauthorized practice of law, processing of grievances against lawyers, and timely commenting on issues of broad public concern, to name but a few. But public benefit is not the test of qualification for exemption, as the legislative history of section 421, discussed hereinafter, makes so abundantly clear. Thus it is, too, that in this context, decisions acknowledging the charitable or educational character of Bar Associations in other contexts for other explicit and distinguishable purposes (e. g., *Dulles v. Johnson*, [2 Cir.] 273 F.

2d 362, cert. den. 364 U. S. 834 [81 S. Ct. 54, 5 L. Ed. 2d 60] ; *St. Louis Union Trust Co. v. United States,* [8 Cir.] 374 F. 2d 427; *Stearns v. Association of Bar of City of N. Y.,* 154 Misc. 71 [276 N. Y. S. 390] ; but see *Matter of Smith [Brooklyn Bar Assn.],* 266 App. Div. 1038, [44 N. Y. S. 2d 620] affd. 292 N. Y. 593 [55 N. E. 2d 368] ) are unpersuasive."

Counsel for MSBA contends that the New York case involved a unique background in which the legislature recently had passed a statute specifically allowing local governments to tax bar associations. The New York court noted that this statutory change was relevant, but pointed out that its decision was not based solely on that factor.

In the instant case involving the sales and use tax, we must balance the commendable activities benefiting the public with the private interests also involved. The bar association mixes public and private purposes when it explains in its constitution that one of its objects is "to organize into one body the entire Bench and Bar of the State of Minnesota in the interests of the legal profession and of the public." Also, the record discloses that in the association's publication, Bench and Bar, January 1972 issue, it is stated:

"* * * Nor are we lacking activities to assist the individual member * * * through group insurance, our magazine, legislative reviews, annual and fall meetings.

"However, for the most part, the Association acts as the voice of the lawyers in furthering programs designed to improve the law and the administration of justice."

MSBA's Bench and Bar magazine consists chiefly of information useful only in the practice of law. The magazine contains official MSBA news, technical articles on practicing law, notes on personnel and address changes affecting local firms, a want-ads section for attorneys, pointers on law office management, and an annual directory of MSBA members. While the contents of Bench and Bar may improve the overall quality of the practice

of law, the magazine primarily appeals to the interests of the organization's members much like any other trade journal.

MSBA also alleges that its educational activities qualify it for tax exemption under Minn. St. 297A.25. As this court noted in Junior Achievement of Greater Minneapolis, Inc. 271 Minn. 385, 389, 135 N. W. 2d 881, 884 (1965), an organization need not be an "academy or seminary of learning" to qualify for tax exemption. Certainly MSBA's encouragement of continuing education for attorneys,[1] its public distribution of legal pamphlets, and its public information programs such as the award-winning "Children and the Law" series are laudable; nevertheless, the bulk of these activities is aimed at the education of lawyers rather than of the general public. Even the pamphlets distributed by MSBA explain inter alia the advantages of an attorney's services in purchasing a home, preparing a will, probating an estate, or other events. These activities do not qualify MSBA as an organization operated "exclusively for educational purposes."

Taking the association's activities as a whole and applying what this and other courts have said, it is difficult to categorize this organization as one "organized and operated exclusively for charitable * * * or educational purposes." The mixture of public and private interests in the Minnesota State Bar Association's lobbying, combined with the professional orientation of its other activities, is sufficient to deny tax exemption.

The decision of the Tax Court is therefore reversed.

MR. JUSTICE TODD took no part in the consideration or decision of this case.

---

[1] For example, MSBA in 1974 petitioned this court to amend its rules for the practice of law in Minnesota to establish minimum requirements for the continuing education of lawyers and to discipline those who failed to meet these requirements.