552 A.2d 1268
## COMPTROLLER OF THE TREASURY
v.
## MARYLAND STATE BAR ASSOCIATION, INC.

No. 16, Sept. Term, 1988.

Court of Appeals of Maryland.

Feb. 8, 1989.

Deborah B. Bacharach, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Linda Koerber Boyd, Asst. Atty. Gen., Gaylin Soponis, Asst. Atty. Gen., all on brief), Baltimore, for petitioner.

T. Scott Basik (Cleaveland D. Miller, Semmes, Bowen & Semmes, on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, COLE, McAULIFFE, ADKINS, BLACKWELL, JJ., and RICHARD P. GILBERT, specially assigned.

MURPHY, Chief Judge.

Maryland Code (1957, 1980 Repl.Vol.) Art. 81, § 326(i) provides an exemption from the State's sales tax for purchases of tangible personal property made "for use in carrying on the work" of a "nonprofit religious, charitable, or educational institution or organization." This case arises from the Maryland Tax Court's decision to discontinue the sales tax exemption which the Maryland State Bar Association previously enjoyed under § 326(i).[1]

## I.

The Maryland State Bar Association, Inc. (MSBA) is a nonprofit corporation organized, according to its charter, for the purposes of advancing the science of jurisprudence, promoting reform in the law, facilitating the administration of justice, upholding the standard of integrity, honor and courtesy in the legal profession, and encouraging legal education. The MSBA is comprised of members of the bar and judiciary who have been admitted to the practice of law in the state. Membership in the MSBA is voluntary. To become a member of the MSBA, an individual must pay annual dues; members must pay additional dues to join a particular section of the MSBA.[2]

The MSBA has been exempt from the State's sales tax since 1969. In that year, an Assistant Attorney General, in an unpublished letter opinion, concluded that the MSBA was entitled to a Retail Sales Tax Exemption Certificate. He found that the MSBA's Articles of Incorporation established *prima facie* that the Association was a nonprofit charitable and educational organization under Article 81, § 326(i). The opinion noted that "all of the activities of the Association are focused upon the education of members of the Bar and that all meetings of the Association include

---

1. Unless otherwise indicated, all section references are to Article 81 of the Code.

2. As of December 13, 1988, the MSBA had 13,082 members.

Continuing Legal Education sessions to facilitate the above-stated purposes." The opinion further stated that "the purposes and activities of the Association are educational in nature ... and that the Association is therefore qualified under § 326(i) for an exemption from the Sales and Use Taxes." Shortly after the issuance of this opinion, the Comptroller issued an Exemption Certificate to the MSBA.

Despite this long-standing exemption, on December 30, 1981 the Comptroller assessed the MSBA for $7,824.96 in sales tax, plus appropriate penalty and interest, for the period December 2, 1977 through November 23, 1981. The MSBA made a timely application for revision, which, after an informal conference, was denied. The MSBA then filed an appeal, requesting that a formal hearing be held on the matter. Before the formal hearing was held, MSBA paid the Comptroller's office $1,289.95 to cover the tax on the sale of books, and that part of the assessment is no longer in dispute.

On September 30, 1982, a formal hearing was held before a hearing officer of the Comptroller's office with respect to the balance of $6,535.01 in tax, which represented the amount allegedly due on the purchase of office supplies and equipment. After receiving evidence and hearing arguments from both the Comptroller and the MSBA, the hearing officer found that the MSBA's primary purpose was not "educational" and that the "overwhelming majority of the Association's activities are inconsistent with the generally accepted meaning of the term." Consequently, the hearing officer ruled in favor of revoking the MSBA's exemption certificate and therefore denied the Association's request for an abatement of the assessment.

The MSBA appealed to the Maryland Tax Court, claiming that its exemption certificate was erroneously revoked. The sole issue before the Tax Court was whether the purchases of equipment and supplies by the MSBA during the assessment period were exempt from the Maryland sales tax by virtue of the MSBA's status as a nonprofit charitable or educational organization under § 326(i).

In support of its argument for exemption, the MSBA presented the testimony of William J. Smith, then Executive Director of MSBA, and Robert H. Dyer, Executive Director of the Maryland Institute for the Continuing Professional Education of Lawyers, Inc. (MICPEL). The MSBA also submitted into evidence its articles of incorporation, its sales tax exemption certificate, its annual budgets for the years 1977–78, 1978–79, and 1980–81, programs from its 1977 annual meeting, several MSBA pamphlets, a number of brochures from legal education seminars which the association co-sponsored with MICPEL, and the unpublished letter opinion of the Assistant Attorney General. To support its claim, the Comptroller presented the testimony of its auditor, Albert Laws, and introduced into evidence the auditor's work papers, the December 1981 assessment notice, the MSBA's 1981–82 budget, and a 1985 MICPEL report.

The parties agreed that the activities of the MSBA could be analyzed through a review of the organization's annual budget. The evidence revealed that the MSBA's operating budget is derived almost exclusively from membership dues and from fees for special events and services. The largest part of the MSBA's yearly expenditures, approximately 44%, is for administrative and salary expense required to support the separately budgeted activities of its 13 standing committees, 21 special committees, and 17 sections.[3] The remaining expenditures are principally allotted to the annual and mid-year meetings, the conference of Local Bar Presidents, the luncheons for new admittees to the Bar, the University of Maryland and University of Baltimore Law Reviews, the Bar Journal, and the Lawyers' Manual.

At the hearing, MSBA Executive Director Smith testified as to the charitable and educational nature of the special committees, standing committees, and sections. This testi-

---

**3.** The parties agreed that the administrative expenditures should be treated as neutral and not characterized as either educational or charitable or as noneducational or noncharitable.

mony revealed that the 21 special committees are organized to perform work in a wide variety of areas, which included the Bicentennial Celebration, the Commemoration of the 200th Anniversary of the Court of Appeals, Environmental Law, Advocacy, Bench/Bar Liaison, Law Day, Citizen's Advisory, Judicial Selection, Editorial Advisory, Law and the Handicapped, Seminar on Ethics, Bar Insurance, Travel Program, Advertising, and Arbitration of. Fee Disputes. Those special committees with the largest budgets included the Citizens Advisory Committee which sponsors a program designed to teach primary and secondary school students about the legal aspects of our society, the Law and the Handicapped Committee, which educates lawyers about the representation of handicapped persons and educates the handicapped as to their legal rights, the Seminar on Ethics, and the Arbitration of Fee Disputes Committee. The special committees with the smallest budgets include the Travel Program, Advertising, and Bar Insurance.

In addition to these special committees, 13 standing committees perform much of the MSBA's work. They consist of the Membership Committee, the Continuing Legal Education Committee, the Economics of Law Practice Committee, the Ethics Committee, the Budget and Finance Committee, the Laws Committee, the Legal Services Committee, the Long Range Planning Committee, the Judicial Appointments Committee, the Medico–Legal Problems Committee, the Program Committee, the Unauthorized Practice of Law Committee, and the Public Awareness Committee. The Membership, Budget and Finance, Program, and Long Range Planning Committees are involved with internal planning and administration. The committees with the largest budgets include the Economics of Law Practice Committee, the Ethics Committee, the Laws Committee, the Judicial Appointments Committee, and the Public Awareness Committee. The Economics of Law Practice Committee provides information to MSBA members on how to run their offices more economically. The Ethics Committee interprets ethical standards for lawyers. The Laws Committee

performs a number of functions. It educates both the public and lawyers concerning legislation that could affect them. It identifies and tracks bills that affect the bar association and lawyers and in some instances may lobby for the passage or defeat of a particular piece of legislation. The Judicial Appointments Committee makes recommendations to judicial nominating commissions as to whom it considers qualified to serve as judges. The Public Awareness Committee works to educate the public about the legal profession and includes efforts to improve the public's view of attorneys.

The committees with the smallest budgets include the Legal Services Committee, the Medico–Legal Problems Committee, and the Continuing Legal Education Committee. The Legal Services Committee is involved with legal services to the poor and elderly; the Continuing Legal Education Committee is involved with continuing legal education to the bar.

Much of the controversy in this case centers upon the Continuing Legal Education Committee which receives a relatively small budget in comparison to the other committees and MSBA projects. Prior to 1975, this committee possessed a relatively large budget and was in charge of organizing and presenting the bulk of the legal education seminars available to the bar. In 1975, MICPEL was formed for the purpose of centralizing the administration of the continuing legal education programs of the University of Maryland Law School, the University of Baltimore Law School and the MSBA. At the hearing, the Comptroller argued that the MSBA transferred its educational function to MICPEL when it was formed, and thus the MSBA no longer qualified as an educational organization.

The testimony of MICPEL's Executive Director revealed that MICPEL is an independent corporate entity completely separate from the MSBA, although there is a great deal of interaction between the two organizations. Of the 28 voting members of MICPEL's board at the time of the assessment, five were specifically designated representatives of

the MSBA.[4] No part of MICPEL's annual budget, approximately $300,000 during the assessment period, is provided by the MSBA.

MICPEL has a very small staff and lacks the expertise to present the wide range of educational programs which it sponsors. Consequently, MICPEL depends upon the MSBA and other organizations to aid in the development of its educational seminars. Often MICPEL relies upon the sections of the MSBA to provide MICPEL with the attorneys who organize and teach the seminars and who produce the written materials which accompany the seminars.

In addition to helping MICPEL with its educational seminars, the sections of the MSBA also work to provide educational exchanges independent of MICPEL. MSBA's Executive Director testified that the sections bring together attorneys who are involved in particular fields of law and give them an opportunity to meet with their peers, to review legislation and plan the educational programs that are presented at its annual and mid-year meetings. Many of the educational programs sponsored by the sections, however, are essentially limited to the education of attorneys practicing in a particular field. In addition, some sections, in particular the Young Lawyers' Section which has the largest budget among all the sections, focus in some part on providing social activities for members.

The MSBA also expends a significant sum on publishing the Bar Journal, the Lawyer's Manual, and on operating the Lawyer's Referral Service. The Bar Journal is a monthly magazine which is distributed primarily to lawyers and which contains reports of the sections and committees and articles dealing with subjects of interest to lawyers. The Lawyer's Manual is a directory of Maryland attorneys with their addresses and phone numbers, as well as a listing of judicial, legislative, and executive branch officials. The

---

4. The MSBA representatives were its President, President–Elect, immediate past President, and the chairs of the Continuing Legal Education and Young Lawyers' Sections.

Lawyer's Referral Service provides information to individuals who wish to retain an attorney in a specific geographic area to handle a specific type of legal problem. Attorneys pay a fee to be listed on the referral panel.

After considering this evidence, the Tax Court ruled that the MSBA did not qualify for a sales tax exemption under § 326(i). At the outset of its opinion, the Tax Court recognized the rule that tax exemptions are to be narrowly construed in favor of the taxing authority and that to doubt an exemption is to deny it (citing *Central Credit v. Comptroller*, 243 Md. 175, 220 A.2d 568 (1966)). It then concluded from its "analysis of the facts" that the "bulk of the services provided by MSBA are provided to and for its members, and these members must pay dues in order to receive these services." Expressing doubt as to MSBA's charitable nature, it said that while the Association was nonprofit and formed for a worthy cause, nevertheless it was not "primarily charitable." The Tax Court also disagreed with MSBA's claim that it was an educational organization because it "provides the educational content for the programs offered by MICPEL." As to this, the Tax Court said:

> "Testimony brought out that MICPEL, although working with other organizations, is an autonomous incorporated entity which provides continuing legal education programs. MSBA provides no funds for the support of MICPEL. Its members may have some input into MICPEL's programs, but MICPEL also seeks input from other bar associations and its members as well as unaffiliated attorneys. MICPEL is free to coordinate its programs with any organizations or persons. The fact that MICPEL may involve members of MSBA in some of its programs does not entitle MSBA to claim that it is the educational arm of MICPEL."

The Tax Court, after reviewing MSBA's corporate purposes, said that MSBA's claim that its activities were primarily educational was not supported by the evidence. It also said that while some of MSBA's activities, *e.g.*, "the conventions,

meetings, committees, sections, etc.," may have an educational element to them, "that element [is] incidental." These activities, the Tax Court stated, foster all of MSBA's corporate purposes, and not just legal education. It characterized the MSBA as "an organization with a professional orientation," and concluded that "any educational aspect present in its activities is, for the most part, a by-product of its overall function to promote and protect the professional interests of its members."

The MSBA appealed to the Circuit Court for Baltimore City. The court (Steinberg, J.) ruled that the Tax Court's determination that the MSBA did not qualify as a charitable or educational institution was not supported by substantial evidence and was erroneous as a matter of law. In the course of its opinion, the circuit court said that the Tax Court was silent on the question whether MSBA would qualify for the exemption "if its primary activities are a *combination* of charitable *and* educational activities." (Emphasis in original.) On this point, the circuit court indicated that the correct standard in determining whether an exemption was appropriate under § 326(i) was whether the activities of the MSBA are primarily a combination of charitable and educational activities. It then conducted its own evaluation of the evidence, reviewing the MSBA's budget line by line, and determined that the MSBA was primarily an educational and charitable organization entitled to retain its sales tax exemption. The Comptroller appealed to the Court of Special Appeals. We granted certiorari prior to a decision by the intermediate appellate court to consider the important issues raised in the case.

## II.

The standard for judicial review of Tax Court decisions is contained in Art. 81, § 229(*o* ). This provision states that a reviewing court "shall determine the matter upon the record made in the Maryland Tax Court.... [and] shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appear-

ing in the record." Section 229(*o* ) places narrow limits upon the scope of review exercised by the circuit and appellate courts over Tax Court decisions. *Supervisor of Assessments of Montgomery County v. Asbury Methodist Home, Inc.*, 313 Md. 614, 625, 547 A.2d 190 (1988). This standard is a deferential one and " 'requires restrained and disciplined judicial judgment.' " *Id., quoting, Insurance Comm'r v. Nat'l Bureau*, 248 Md. 292, 309–10, 236 A.2d 282 (1967). Accordingly, the agency's decision is presumed to be correct and valid, and a court must review an agency's decision in the light most favorable to it. *Ramsay, Scarlett & Co. v. Comptroller*, 302 Md. 825, 835, 490 A.2d 1296 (1985). Under § 229(*o* ), a reviewing court may substitute its judgment for that of the Tax Court only "when the Tax Court's order is premised *solely* upon an erroneous conclusion of law." *Asbury Methodist, supra*, 313 Md. at 626, 547 A.2d 190 (emphasis in original). When "the Tax Court's decision is based on a factual determination, and there is no error of law, the substantial evidence test applies." *Id.* at 627, 547 A.2d 190.

### A.

 We first consider whether the Tax Court correctly recognized and applied the principles of law which govern this case. It correctly found that the law controlling this case is contained in Art. 81, § 326(i). That section, as already observed, provides in relevant part that the State sales tax does not apply to "[s]ales to a nonprofit religious, charitable, or educational institution or organization ... when such tangible personal property is purchased for use in carrying on the work of such institution or organization." The Tax Court also correctly recognized that this case is not controlled by Section 501(c)(3) of the Internal Revenue Code which exempts from federal taxation organizations operated exclusively, *inter alia*, for charitable or educational purposes. Section 326(i) provides that the "Comptroller may treat possession of an effective determination letter from the Internal Revenue Service as to qualification under

§ 501(c)(3) ... as evidence that an institution or organization is a nonprofit religious, charitable, or educational institution or organization within the meaning of this subsection." As the Tax Court noted, while the possession of a § 501(c)(3) exemption may be accepted as evidence of an organization's charitable or educational nature, § 326(i) does not indicate that lack of a § 501(c)(3) exemption disqualifies an organization from entitlement to a § 326(i) exemption. Thus, the Tax Court correctly found that the MSBA's lack of a federal tax exemption was not determinative of the present case.[5]

Having determined that the Tax Court correctly recognized these aspects of controlling law, we next consider whether it correctly interpreted the words "charitable" and "educational" in the context of the § 326(i) exemption. In this regard, the parties refer us to cases from other jurisdictions. In *Minnesota State Bar Association v. Com'r of Taxation,* 307 Minn. 389, 240 N.W.2d 321 (1976), the court held that the Bar Association was not an association organized and operated exclusively [6] for charitable or education-

---

5. At oral argument before us, counsel for MSBA said that the Association has never applied for § 501(c)(3) status. Currently, its status for exemption is under § 501(c)(6)—"Business leagues, chambers of commerce, real estate boards, boards of trade, or professional football leagues ..., not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual."

6. The Minnesota statute, unlike the Maryland statute, requires that the organization be organized "exclusively" for educational or charitable purposes. The court in *Minnesota State Bar,* however, construed the term "exclusively" to mean that "noncomforming activities are only incidental." 240 N.W.2d at 324. *See also Gas Research Institute v. Dept. of Revenue,* 154 Ill.App.3d 430, 107 Ill.Dec. 477, 481, 507 N.E.2d 141, 145, *appeal denied,* 116 Ill.2d 554, 113 Ill.Dec. 298, 515 N.E.2d 107 (1987) (holding that "[a]n exclusively charitable purpose need not be interpreted literally as the entity's sole purpose; it should be construed to mean the primary purpose, but not a merely incidental or secondary purpose or effect"); *Association of Bar of City of New York v. Lewisohn,* 34 N.Y.2d 143, 356 N.Y.S.2d 555, 562, 313 N.E.2d 30, 35 (1974) (holding that "'exclusive', as used in the context of these exemption statutes, has been held to connote 'principal' or 'primary' ").

al purposes and thus did not qualify for an exemption from the State's sales tax. According to its constitution, the Minnesota Bar Association was formed for purposes similar to those of the MSBA. These purposes included the upholding of the constitution and laws of the state and federal government, the organizing of the State's bar, the correlation of the activities of the affiliated bar associations, the cultivating of the study of jurisprudence, the promotion of law and justice, and the maintaining of high standards of ethics, integrity, honor and courtesy in the legal profession. The Minnesota State Bar was comprised of committees similar to those of the MSBA. The Minnesota State Bar possessed a legal committee which reviewed and recommended legislation to be presented in the legislature, committees for legal aid, community relations, judicial compensation, the unauthorized practice of law and various other committees. It published a monthly magazine similar to the MSBA's bar journal, maintained a client-security fund, and provided health, life, and professional insurance plans for its members.

The court found that while the Minnesota State Bar Association sponsored several worthwhile activities, the bulk of its activities were not charitable or educational. In reaching this conclusion, the court balanced the association's commendable activities which generally benefited the public with the private interests involved. It found that while the Minnesota State Bar Association's "encouragement of continuing education for attorneys, its public distribution of legal pamphlets, and its public information programs such as the award-winning 'Children and the Law' series are laudable; nevertheless, the bulk of these activities is aimed at the education of lawyers rather than of the general public." 240 N.W.2d at 325–26. The court concluded that the Minnesota State Bar Association was not primarily an educational or charitable organization and thus it did not qualify for a sales tax exemption. *See also Association of Bar of City of New York v. Lewisohn*, 34 N.Y.2d 143, 356 N.Y.S.2d 555, 313 N.E.2d 30 (1974) (holding that

while the bar association "confers a public benefit, and a great one, through its laudable activities in the screening of judicial candidates, rooting out the unauthorized practice of law, processing of grievances against lawyers, and timely commenting on issues of broad public concern," it nevertheless did not qualify for exemption from property taxes as a charitable or educational organization). For cases holding that a bar association is a charitable and educational organization for the purpose of an exemption from the federal estate and gift tax, *see St. Louis Union Trust Company v. United States,* 374 F.2d 427 (8th Cir.1967); *Dulles v. Johnson,* 273 F.2d 362 (2d Cir.1959); and *Rhode Island Hospital Trust Co. v. United States,* 159 F.Supp. 204 (D.R.I.1958).[7] *Compare Hammerstein v. Kelley,* 349 F.2d 928 (8th Cir. 1965) (holding that medical society did not qualify as a charitable organization for purposes of the estate tax); *American Institute of Industrial Engineers v. Chilivis,* 236 Ga. 793, 225 S.E.2d 308 (1976) (holding that organization the primary purpose of which is the promoting of the advancement of industrial engineering and which fulfilled this purpose by distributing technical publications to its members and through seminars and other educational workshops does not qualify as a charitable or educational institution deserving of an exemption from the State's real and personal property taxes); *Gas Research Institute v. Dept. of Revenue, supra,* (upholding administrative agency's determination that the primary purpose of a gas research institute, which was organized, overseen, and operated by members of natural gas industry, was to enhance position of natural gas in energy marketplace and that any benefits to public arose incidentally and thus the institute was not a charitable institution entitled to exemption from sales tax); *South Dakota State Medical Association v. Jones,* 82 S.D. 374, 146 N.W.2d 725 (1966) (holding that while a more

---

**7.** The court noted in *Minnesota State Bar, supra,* 240 N.W.2d at 324, that these cases were governed by the principle, unlike that applicable to sales tax exemptions, that public policy favors tax exemption from federal estate and gift taxes for bequests to bar associations.

enlightened medical profession benefits the public, the State's medical association was not entitled to a charitable exemption because there existed elements of personal advantage and profit to members of the society which differed from those inuring to the public); *Intern. Foundation, etc. v. City of Brookfield*, 95 Wis.2d 444, 290 N.W.2d 720 (1980), *aff'd*, 100 Wis.2d 66, 301 N.W.2d 175 (1981) (holding that an organization which was formed to provide educational help to trustees of employee benefit plans was organized to help a definite rather than an indefinite class of people, and thus was not an educational institution entitled to a tax exemption).

*MSBA's status as a charitable organization*

■ In *Supervisor v. Group Health Ass'n*, 308 Md. 151, 517 A.2d 1076 (1986), we declined to establish a hard-and-fast rule as to the meaning of "charitable" for purposes of interpreting Art. 81, § 9(e)(2), which grants an exemption from real property taxation for property owned by any nonprofit charitable organization when it is used for charitable purposes. We said that "a determination of whether an institution is charitable must include a careful examination of the stated purposes of the organization, the actual work performed, the extent to which the work performed benefits the community and the public welfare in general, and the support provided by donations." *Id.* at 157, 517 A.2d 1076. This characterization of the term charitable is consistent with tests formulated by courts in other states in cases involving the propriety of awarding a tax exemption to an organization, claiming to be a charitable institution. *See Gas Research Institute v. Dep't of Revenue, supra*, 107 Ill.Dec. at 480, 507 N.E.2d at 144 (while noting that "[t]he law recognizes as charitable those activities which benefit an indefinite number of persons through the exercise of specific educational or religious influences, engaging in public works or by otherwise lessening the burden upon the State to care for or advance the interests of its citizens," the court found that under Illinois law to qualify for

a sales tax exemption as a charitable association, an organization must be "organized and operated to benefit an indefinite number of people; there may be restrictions on the group benefited, but the service rendered to those eligible must act to relieve the public of an obligation, moral or economic, which it would otherwise have to such beneficiaries or it must confer some general benefit onto the public"); *South Dakota State Medical Association v. Jones, supra,* 146 N.W.2d at 729, *quoting, Massachusetts Medical Soc. v. Assessors of Boston,* 340 Mass. 327, 164 N.E.2d 325 (" '[a]n institution will be classed as charitable if the dominant purpose of its work is for the public good and the work done for its members is but the means adopted for this purpose. But if the dominant purpose of its work is to benefit its members or a limited class of persons it will not be so classed, even though the public will derive an incidental benefit from such work' "); *Intern. Foundation, etc. v. City of Brookfield, supra* (adopting the test set forth in the *South Dakota State Medical Association,* case).

The record indicates that the Tax Court considered the first of the four factors cited in *Group Health* when it reviewed the MSBA's articles of incorporation which set forth the purposes of the organization. The record also indicates that the parties presented the Tax Court with a wealth of evidence as to the work performed by the MSBA and the extent to which that work benefits the community and the public welfare in general, thus establishing that the Tax Court had before it the second and third *Group Health* factors. In addition, the Tax Court's opinion indicates that it considered these factors when it stated that "[t]he bulk of the services provided by MSBA are provided to and for its members." It also considered the amount of support provided by donations, finding that the Association's income is derived almost exclusively from dues and fees. Thus, we think that the Tax Court understood the meaning of the word "charitable" in § 326(i) and properly applied it to the evidence in the case. Its factual determination that the MSBA was not primarily a charitable organization was

supported by substantial evidence, i.e., by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Ramsay, Scarlett & Co. v. Comptroller, supra,* 302 Md. at 835, 490 A.2d 1296. In so holding, we recognize that it is the province of the administrative agency to resolve conflicting evidence and where inconsistent inferences can be drawn from the same evidence, it is for the agency, not the court, to draw the inference. *Id.*

### *MSBA's status as an educational organization*

In considering the meaning of the word "educational," as contained in § 326(i), the Tax Court indicated that the term was to be given its "usual meaning in law," citing *State Tax Comm. v. Whitehall,* 214 Md. 316, 320, 135 A.2d 298 (1957). The Tax Court correctly noted that, contrary to MSBA's contention, the issue of the proper construction of the term "educational" was not addressed by this Court in *Md. State Fair v. Supervisor,* 225 Md. 574, 172 A.2d 132 (1961). That case involved taxes sought to be levied against certain property of the Maryland State Fair and Agricultural Society, Inc., which operated the Maryland State Fair. It was conceded that the Society was an educational institution; the concession was based largely on an opinion of then Attorney General Hall Hammond that the Society was an educational organization entitled to a sales tax exemption under the statute. 36 Op.Att'y Gen. 303 (1951). It was there noted that the Society, in its conduct of the State Fair, was a nonprofit organization incorporated "to save the State Fair for the benefit of Maryland farmers, breeders and those interested in the conservation of natural resources, as well as of the general public and the citizens of the State." *Id.* at 304. The opinion sets forth a number of cases throughout the country holding that a State Fair is an educational institution or organization, notwithstanding its incidental amusement programs. Those cases, according to the Attorney General, found State Fairs to be educational because they were planned and managed for the general

welfare of the people to inform them about the resources of the region in matters pertaining to agriculture and industry, and methods by which they may be conserved, utilized, and improved. In finding the Society exempt from sales tax, the Attorney General stressed that the State Fair had been exempt from property taxes since 1867 and that this was a "clear indication of a public policy that such organizations are entitled to exemption" to further educational purposes. *Id.* at 309. Finding no such indication of a similar public policy in favor of exempting the MSBA, and after considering the evidence, the Tax Court concluded that that organization was not primarily educational.

While the Tax Court purported to apply the "usual meaning in law" of the word "educational," as used in § 326(i), we are unable to glean from its opinion what it found that meaning to be. In determining that the MSBA was not primarily an educational organization, the Tax Court emphasized that the Association has a "professional orientation," that the bulk of its services are provided to its own members, and that the members pay dues to receive them. Upon this premise, the Tax Court appeared to make a *per se* determination that the MSBA's educational activities were but an incidental by-product of the Association's overall function to promote and protect the professional interests of its members. To apply such a test, we think, would constitute an error of law; it would propogate too restrictive a view of the "educational organization" exemption of § 326(i), one plainly at odds with the legislative intention.

■ As in *Supervisor v. Group Health Ass'n, supra,* involving the meaning of the word "charitable," whether an organization is primarily educational requires a careful examination of its stated purposes, the actual work performed by it, and in particular the nature and extent of its educational activities. Merely because education is provided to dues paying members of the Association and not directly to the public does not, contrary to the intimation in the *Minnesota State Bar* case, disentitle the organization to the exemption. In other words, because the MSBA's education-

al activities may be predominantly for its members is not alone determinative of whether the Association is an educational organization in the sense contemplated by § 326(i).

■ To be entitled to an exemption based solely on the educational organization exemption, the organization's focus must be shown to be primarily educational. In the context of a tax exemption statute, *Black's Law Dictionary* 461 (5th ed. 1979) defines "educational purposes" of an educational organization to encompass "systematic instruction in any and all branches of learning from which a substantial public benefit is derived." This is consistent with the general rule that exemption from taxation must be for a public purpose. *Wilson v. Board of Co. Comm'rs,* 273 Md. 30, 44, 327 A.2d 488 (1974); *Katzenberg v. Comptroller,* 263 Md. 189, 197, 282 A.2d 465 (1971); *Kimball–Tyler v. Balto. City,* 214 Md. 86, 97, 133 A.2d 433 (1957). *See also* 71 Am.Jur.2d *State and Local Taxation,* §§ 307, 362, and 382 (1973). Manifestly, the term "educational institution or organization" in § 326(i) is not limited to schools, colleges or universities. Through its various functioning parts, the MSBA does provide a measure of systematic instruction to and for its members to enhance their ability to better serve the public good, a well-recognized public purpose. And some of the Association's educational pursuits are aimed more directly at educating the public on law-related matters of substantial public importance. We thus look to the entity seeking exemption as an educational organization as a whole to ascertain its primary or dominant purpose. *See, e.g.,* Annotation, *Exemption of Charitable or Educational Organization from Sales or Use Tax,* 59 A.L.R.3d 748–773 (1974); Annotation, *What are Educational Institutions or Schools within State Property Tax Exemption,* 34 A.L.R.4th 698–754 (1984). And *see generally* 68 Am.Jur.2d. *Sales and Use Taxes* § 116 (1973). We therefore shall direct that the case be remanded to the Tax Court to apply the proper legal test to the facts as it finds them in making this determination.

## III.

The MSBA argues that the Tax Court also made an error of law in interpreting § 326(i) to require that it be primarily charitable *or* primarily educational, as opposed to being primarily a charitable *and* educational organization. In this regard the MSBA points out that the parties are in agreement that the organization must be primarily educational or charitable or a combination of both, to be accorded the exemption; and that if it spends over half its budget on either educational or charitable activities, or both, it is an organization which qualifies for the exemption.

The Tax Court's opinion does not indicate with any degree of clarity whether it considered the MSBA's charitable and educational activities as a combination, or only separately, in making its decision. We think the correct test for measuring an organization's tax exempt status under § 326(i) is to consider its charitable and educational activities in combination in determining its exempt status. *See City of Nome v. Catholic Bishop of No. Alaska,* 707 P.2d 870, 880 (Alaska 1985). Accordingly, the case will be remanded to the Tax Court to determine (1) the degree to which the MSBA conducts educational programs and activities within the ambit of § 326(i); (2) whether education is the Association's primary purpose; and (3) if the Association's focus is not primarily educational, whether the combination of its charitable and educational activities together mount up to an organization engaged primarily in educational and charitable pursuits under the statute.

JUDGMENT OF THE CIRCUIT COURT

FOR BALTIMORE CITY VACATED; CASE REMANDED TO THAT COURT WITH DIRECTIONS THAT IT REMAND THE CASE TO THE MARYLAND TAX COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO ABIDE THE RESULT.

GILBERT, J., concurs in the result.